TRUTEC OIL AND GAS, INC. d/b/a Martindale Associates Limited and Trutec Investment Services Company Limited, Appellants,

v.

WESTERN ATLAS INTERNATIONAL, INC., Western Atlas, Inc., Brass Exploration Unltd., Western Geophysical Co., Ltd., WI, Inc., Baker Hughes Incorporated, Brassco (Cayman) Limited, Brass Holding Limited, and JP Morgan Chase Bank, Appellees.

No. 14–04–00363–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 25, 2006.

Rand Patrick Nolen, Sylvia Davidow, Houston, for appellants.

Ann Ryan Robertson, James Robert Wetwiska, Katherine D. Mackillop, Murry B. Cohen, Houston, for appellees.

Panel consists of Justices FOWLER, EDELMAN, and GUZMAN.

## OPINION

WANDA McKEE FOWLER, Justice.

This appeal arises from an agreement relating to a Nigerian oil prospecting license, which later became an oil mining lease. Appellants Trutec Oil and Gas, Inc., d/b/a Martindale Associates Limited and Trutec Investment Services Company Limited ("Trutec") sued appellees ("Western Atlas et al.")[1] and others for breach of contract, breach of fiduciary duty, conversion, tortious interference with contract, and conspiracy, and sought an accounting, a constructive trust, and a declaratory judgment. In the court below, Western

---

1. We will refer to appellees collectively as "Western Atlas et al."

Atlas et al., asserted that Trutec's lawsuit claimed an interest in Nigerian mineral interests and, thus, claims an interest in Nigerian real property. Agreeing with Western Atlas et al. about the nature of Trutec's suit, the trial court dismissed Trutec's claims for lack of subject matter jurisdiction. On appeal, Trutec contends the trial court erred in granting the motion to dismiss, because its lawsuit involves Nigerian realty only tangentially. Trutec characterizes its lawsuit as one involving personal property, and contends that the rights granted by the oil prospecting license are a privilege that conveys no interest in real property. We affirm because Trutec's lawsuit required the trial court to determine if Trutec had an ownership interest in real property located in Nigeria and, therefore, outside the court's jurisdiction.

### A. FACTUAL BACKGROUND.

Trutec claims its interest arose from dealings with Moni Pulo Limited, a Nigerian company. In 1992, Moni Pulo was granted an oil prospecting license, denominated "Oil Prospecting License 230,"[2] to explore and prospect for oil in certain areas offshore Nigeria by the Federal Republic of Nigeria. Over time, Moni Pulo and Trutec entered into agreements relating to Oil Prospecting License 230; those agreements later became the focus of this lawsuit. The relationship among Moni Pulo, Trutec, and Western Atlas et al. is recounted in detail in this court's earlier opinion in *Moni Pulo Ltd. v. Trutec Oil & Gas, Inc.*, 130 S.W.3d 170 (Tex.App.-Houston [14th Dist.] 2003, pet. denied), in which we held that the trial court lacked personal jurisdiction over Moni Pulo and dismissed

---

2. In the documents, "license" is spelled "licence," but in the interest of consistency and uniformity we will spell "license" the standard way throughout this opinion.

the company from the case. We will limit our discussion here to the facts relevant to our disposition of this appeal.

In 1994, Moni Pulo and Trutec [3] entered into a "Consultancy Agreement" in which Trutec agreed to perform certain services relating to Oil Prospecting License 230 in exchange for "10% (Ten percent) of equity and 10% of buying in fees realised in Oil Prospecting License 230 and any leases granted therefrom and any extensions thereof." According to Trutec, it was to provide a $1 million "signature bonus" payable to the government and to help find a "technical partner" to oversee development. Two years later, in January 1996, Moni Pulo and Trutec entered into a second consultancy agreement that allegedly superseded the 1994 agreement. This second agreement allegedly reduced Trutec's interest to "6% ... of [the] equity shares" of Moni Pulo.

Shortly after this second consultancy agreement was executed, Moni Pulo entered into a Joint Venture Agreement with appellee Brass Exploration Unltd., a Nigerian unlimited-liability company.[4] In this joint venture agreement, Moni Pulo, as "Owner," and Brass, as "Technical Partner," agreed to explore and develop Oil Prospecting License 230, and Moni Pulo assigned to Brass a 40% "Participating Interest" in all hydrocarbon exploration, development, production and sales from Oil Prospecting License 230.[5] Among oth-

er things, the joint venture agreement provided that, upon the fulfillment of certain conditions, Brass would pay $845,455 to Trutec as "full and final payment" for "services rendered" to Moni Pulo. Moni Pulo and Brass also entered into an Operating Agreement to define their rights and obligations with respect to operations under Oil Prospecting License 230. The exploratory operations were apparently successful, and the area covered by Oil Prospecting License 230 was converted to an oil mining lease, Oil Mining Lease 114.

Believing that Moni Pulo had not kept its end of the bargain agreed to in the first consultancy agreement, Trutec Investment Services filed suit in Nigeria against Moni Pulo, Brass, Western Atlas International, Inc. and WI, Inc. In that suit, Trutec argued it was entitled to a "10% ... undivided participating interest in Block 230 granted to [Moni Pulo]...." However, Trutec's representative apparently refused to continue to participate in the trial and left the country. *Moni Pulo*, 130 S.W.3d at 174. Consequently, the Nigerian court dismissed the suit. *Id.*

But the controversy did not end there. While the Nigerian case was still pending, Trutec filed this suit in Harris County against the same defendants and others, and alleged claims similar to those made in the Nigerian case. Moni Pulo filed a special appearance, which the trial court denied. On appeal, this court dismissed

**3.** The 1994 Consultancy Agreement reflects that it is between Moni Pulo and Trutec Investment Services Company Limited, a Nigerian company, "in association with its overseas Technical associate" Martindale Associates Limited. As a result of a merger, appellants are now Trutec Oil and Gas, Inc. /d/b/a Martindale Associates Limited and Trutec Investment Services Company Limited.

**4.** The joint venture agreement between Brass Exploration and Moni Pulo reflects that Brass is a Nigerian subsidiary of appellees WI, Inc.

and Western Atlas International, Inc. Western Atlas and Baker Hughes merged in 1998.

**5.** In Nigeria, the government owns all oil and gas resources, and no interest granted by the government may be assigned without the government's approval. Although the Nigerian government approved the assignment to Brass, it is undisputed that Trutec has never sought or obtained the Nigerian government's approval for any assignment to it. *See Moni Pulo*, 130 S.W.3d at 174.

Moni Pulo from the suit based on lack of personal jurisdiction. *Moni Pulo*, 130 S.W.3d at 181.

Trutec made numerous claims against the remaining defendants, including breach of contract, conversion, tortious interference and unfair business practices, breach of fiduciary duties, and conspiracy. Trutec sought actual and exemplary damages, an accounting, a constructive trust, and declaratory relief. Appellees Western Atlas International, Inc., Western Atlas, Inc., Brass Exploration Unltd., Western Geophysical Co., Ltd, WI, Inc., Baker Hughes Incorporated, Brassco (Cayman) Limited, Brass Holding Limited, and JP Morgan Chase Bank (Chase Bank of Texas, N.A.) moved to dismiss Trutec's claims against them for lack of subject matter jurisdiction. On January 14, 2004, the trial court granted the motion to dismiss. Trutec filed a motion for reconsideration, which was overruled by operation of law. This appeal followed.

## B. TRUTEC'S SUIT REQUIRES THE ADJUDICATION OF INTERESTS IN REAL PROPERTY.

Though our *Moni Pulo* opinion involved a different issue than this appeal, ironically, a footnote contained in that opinion has taken center stage in this appeal. We observed in the footnote that "Texas law would view Trutec's suit as a claim for a mineral interest[ ], and thus title to land," and so "Trutec's attempt to recast it as a mere suit for damages would be disregarded." *See* 130 S.W.3d at 180 n. 39 (citations omitted). In three issues, Trutec challenges this dicta by asserting that the district court had subject matter jurisdiction over its claims because (1) Trutec's lawsuit does not require the adjudication of title to foreign realty, (2) Trutec's claims involve personal property, and (3) the rights granted by Oil Prospecting License 230 are a privilege rather than an interest in

real property. Finding that our previous dicta is accurate and resolves this appeal, we overrule Trutec's challenges. We explain below.

### 1. Texas Courts Cannot Adjudicate Interests in Real Property Located Outside the State; Interests in Oil and Gas Leases are Interests in Property.

 Texas courts may not adjudicate title to realty in another state or country; they do not have subject matter jurisdiction over property outside the state. *Holt v. Guerguin*, 106 Tex. 185, 163 S.W. 10, 12 (1914); *Kelly Oil Co., Inc. v. Svetlik*, 975 S.W.2d 762, 764 (Tex.App.-Corpus Christi 1998, pet. denied); *Carmichael v. Delta Drilling Co.*, 243 S.W.2d 458, 459–60 (Tex. Civ.App.-Texarkana 1951, writ ref'd). Of significance here, interests in oil and gas rights—such as working interests and royalty interests in oil and gas leases—are considered interests in real property. *See MCEN 1996 P'ship v. Glassell*, 42 S.W.3d 262, 263 (Tex.App.-Corpus Christi 2001, pet. denied) (citing *Renwar Oil Corp. v. Lancaster*, 154 Tex. 311, 276 S.W.2d 774, 776 (1955); *State v. Quintana Petroleum Co.*, 134 Tex. 179, 133 S.W.2d 112, 114–15 (1939)); *Carmichael*, 243 S.W.2d at 459–60; *Kelly Oil Co., Inc.*, 975 S.W.2d at 764. As a result, the general prohibition against determining rights in real property located in other states or countries extends to rights in oil and gas leases in other states or countries. *See Kelly Oil*, 975 S.W.2d at 764; *Miller v. Miller*, 715 S.W.2d 786, 788–89 (Tex.App.-Austin 1986, writ ref'd n.r.e.); *Carmichael*, 243 S.W.2d at 459–60.

### 2. Trutec's Response for Why the General Rule Does Not Apply to Its Suit.

Trutec acknowledges this general prohibition against Texas courts adjudicating interests in non-Texas property, but maintains this general rule does not apply here. It contends that its breach of contract,

tort, and other claims are only "tangentially" related to real property, so that the trial court had jurisdiction over its claims and thus erred in dismissing its lawsuit. Trutec argues that its claims were brought to enforce in personam, or "transitory" rights that may be adjudicated in a Texas court. Trutec contends Western Atlas et al. has implicitly mischaracterized Trutec's suit as an in rem, or "local" action, and— without expressly saying so—relied on the "local action doctrine" to dismiss Trutec's claims. Trutec argues that the local action doctrine applies only when the asserted claims are limited strictly to the adjudication of foreign title. *See Tex. & Pac. Ry. Co. v. Gay*, 86 Tex. 571, 26 S.W. 599, 605 (1894) ("[W]hen the suit is strictly local, the subject-matter is specific property, and the relief, when granted, is such that it must act directly upon the subject-matter, and not upon the persons of the defendant, the jurisdiction must be exercised in the state where the subject-matter is situated.") (citations omitted); *see also Hayes v. Gulf Oil Corp.*, 821 F.2d 285, 286–90 (5th Cir.1987) (tracing development of local action doctrine and affirming its continued viability in Texas law); *Keller v. Millice*, 838 F.Supp. 1163, 1169–73 (S.D.Tex.1993) (examining history of local action doctrine and discussing distinctions between local and transitory actions). We will consider these arguments below.

### 3. Standard of Review.

■■■■ Appellants' motion to dismiss is the functional equivalent of a plea to the jurisdiction. *Anderson v. City of San Antonio*, 120 S.W.3d 5, 7 (Tex.App.-San Antonio 2003, pet. denied). A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a cause of action. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Subject matter jurisdiction raises a question of law, which we review de novo. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998). In deciding a plea to the jurisdiction, a court must not weigh the claims' merits and should consider only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). When considering a trial court's order on a plea to the jurisdiction, we first review the plaintiff's pleadings. We construe the pleadings in the plaintiff's favor and look to the pleader's intent. *Id.*

As we explain below, we are of the opinion that the factors relevant to the outcome of this plea to the jurisdiction reflect that Trutec is seeking an interest in real property. At its core, Trutec's complaint is that it had an interest in the oil producing license (the functional equivalent of an oil and gas lease) and therefore that it should have an interest in Oil Mining Lease 114 (also equivalent to an oil and gas lease).

### 4. Trutec's Pleadings and Evidence Pertinent to Jurisdiction.

#### a. *Alleged Factual Misdeeds.*

To determine the nature of Trutec's claims, we turn to Trutec's last live pleading, and the relevant evidence in the record. In its petition, Trutec alleges a litany of misdeeds, including the following:

● "This case concerns, *inter alia,* contracts, tortious interference and the wrongful taking of Plaintiffs' interest in hydrocarbon production on oil-producing properties in Nigeria through breach of contracts, breaches of fiduciary and other duties, manipulation and conspiracy, among other things, and the conversion of Plaintiffs' property rights and interests."

● "Plaintiffs entered into an agreement ... [with Moni Pulo] ... to retain [Oil Prospecting License] 230 ... and to

explore and develop the property.... Moni Pulo conveyed to Plaintiffs a 10% interest in all oil and hydrocarbons produced from block [Oil Prospecting License] 230. Defendants acknowledged and were aware of the arrangement and terms of the agreement in which Plaintiffs obtained their interests in [Oil Prospecting License] 230 and the hydrocarbon production derived from it...."

● "Throughout the process of selecting and procuring the technical joint venture partner for development of [Oil Prospecting License] 230, [Defendants' agents] made numerous agreements, representations and promises about recognizing Plaintiffs' 10% in [Oil Prospecting License] 230, and assuring Plaintiffs that [these Defendants] would ensure that such interests would be preserved and agreed that Plaintiffs would be paid in full if, as, and when production of hydrocarbons commenced."

● "Unbeknownst to Plaintiffs, Defendants entered into and participated in a scheme and conspiracy to deprive Plaintiffs of their interests in [Oil Prospecting License] 230."

● "[P]roduction of hydrocarbons in commercial quantities on [Oil Prospecting License] 230 commenced in March 1999. Defendants entered into a lease ([Oil Mining Lease] 114) covering production of hydrocarbons on [Oil Prospecting License] 230. The failure of the Defendants to pay Plaintiffs on and after March 1999 their 10% caused Plaintiffs a legal injury and damage for which this suit seeks redress."

● "As set out above, Defendants contracted to pay Plaintiffs 10% of all hydrocarbons, if, as, and when produced from [Oil Prospecting License] 230. Defendants breached their contracts in March 1999 and thereafter by failing to pay Plaintiffs their share of the revenue from the hydrocarbons each month and such breach continues."

● "[B]eginning in March 1999, Defendants illegally and wrongfully stole and converted Plaintiffs' interest and property rights to [Oil Prospecting License] 230 and the hydrocarbons produced therefrom."

● "Defendants engaged and continue to engage in an illegal civil conspiracy to take from Plaintiffs monies, property interests, and compensation duly owed to Plaintiffs, as well as owing to Plaintiffs under the terms of an agreement and long-term relationship relating to hydrocarbon production on [Oil Prospecting License] 230.... Plaintiffs have suffered damages beginning in March 1999 and continuing through time of trial as a proximate result of Defendants' conspiracy."

● "Plaintiffs are entitled ... to a declaration from this court that Plaintiffs are entitled to 10% of all revenue and production from [Oil Prospecting License] 230/[Oil Mining Lease] 114, in the future."

Although some of the petition's language seeks a recovery of proceeds from the sale of production, Trutec's core complaint throughout is that it has been wrongfully deprived of its interest in Oil Prospecting License 230, the oil producing license, and, subsequently, its interest in Oil Mining Lease 114. As stated in Trutec's factual background: "Moni Pulo conveyed to Plaintiffs a 10% interest in all oil and hydrocarbons produced from block Oil Prospecting License 230" and "[t]he failure of the Defendants to pay Plaintiffs on and after March 1999 their 10% caused Plain-

tiffs a legal injury and damage for which this suit seeks redress."

b. *The Causes of Action.*

■ These factual underpinnings, claiming deprivation of the functional equivalent of an interest in an oil and gas lease, and, thus, the deprivation of a property interest are mirrored in Trutec's causes of action.

- *Breach of Contract:* The breach of contract claim is based on an alleged oral promise by the Western Atlas et al. to recognize Moni Pulo's alleged transfer of ten percent of its interest to Trutec.[6]

- *Conversion of Hydrocarbons:* Trutec's claim for conversion of hydrocarbons is likewise based on a claimed ownership of mineral interests. To prove that Western Atlas et al. converted the hydrocarbons, Trutec must establish that it has title to the property converted, that is, the oil and gas produced from Oil Prospecting License 230 and Oil Mining Lease 114. *See Bosworth v. Gulf Coast Dodge, Inc.,* 879 S.W.2d 152, 158 (Tex.App.-Houston [14th Dist.] 1994, no writ) (conversion claim requires plaintiff to have ownership rights). To have title to the oil and gas, Trutec necessarily must have an ownership interest in Oil Prospecting License 230 and Oil Mining Lease 114.

- *Tortious Interference:* Trutec's tortious interference claim also fails

without a transfer of the ten percent ownership of the lease. Tortious interference requires the existence of a contract, which here was the conveyance of mineral interests. *See Roof Systems, Inc. v. Johns Manville Corp.,* 130 S.W.3d 430, 435 (Tex.App.-Houston [14th Dist.] 2004, no pet.). Without a contract conveying the mineral interests, the appellees could not have interfered with Trutec's contract and damaged Trutec.

- *Breach of Fiduciary Duty:* The breach of fiduciary duty claim relies on the same set of facts as the breach of contract action, but additionally alleges the appellees acted as fiduciaries and breached fiduciary duties to Trutec.[7]

- *Declaratory Action:* Trutec's request for declaratory relief seeks a declaration that Trutec is entitled to future production from the oil field, and is thus directly dependent upon its ownership rights.

c. *The 1994 Consultancy Agreement.*

The 1994 Consultancy Agreement also reflects the transfer of an interest in oil and gas rights. That agreement—the original agreement Trutec contends was breached and from which its interest and property rights allegedly flow—provides that Trutec is to receive "10% (Ten percent) of equity and 10% of buying in fees realised in Oil Prospecting License 230 and

---

**6.** At oral argument, Trutec argued that the specific issue bestowing the trial court with subject matter jurisdiction was whether this oral contract was breached, and Trutec's contract with Moni Pulo was irrelevant to this determination. However, if Trutec was not given ten percent of the mineral interest, then it has no breach of contract claim.

**7.** Trutec also alleges "breach of constructive trust" and seeks an accounting; but a constructive trust is not a cause of cation, only a

remedy for breach of fiduciary duty. *See Grace v. Zimmerman,* 853 S.W.2d 92, 97 (Tex. App.-Houston [14th Dist.] 1993, no writ). Similarly, Trutec alleges conspiracy, but a defendant's liability for conspiracy depends on his participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable. *See Tilton v. Marshall,* 925 S.W.2d 672, 681 (Tex. 1996).

any leases granted therefrom and any extensions thereof." Thus, Trutec was to hold a ten percent interest in Oil Prospecting License 230, and a ten percent interest in future leases. It received none of these interests and now claims what it believes it is due.

### d. *The License.*

The Oil Prospecting License also is before us. It grants Moni Pulo the right "to prospect for petroleum in, upon and under the lands described in the schedule hereto ..." and states that the license is subject to the Petroleum Act of 1969 and the regulations thereunder. Under the Petroleum Act and its regulations, the holder of an oil prospecting license like Oil Prospecting License 230 is granted "the exclusive right to explore and prospect for petroleum within the area of his licence" and "may carry away and dispose of petroleum won during prospecting operations...." Petroleum Act, (1969) Cap. 350, 12644, 12656 (Nigeria) (the "Act"). The Act defines "prospect" as meaning to "search for by all geological and geophysical methods, including drilling and seismic operations." *Id.* at 12654. The holder of an oil prospecting license who satisfies the conditions imposed upon him by law and who discovers oil in commercial quantities may be granted an oil mining lease (which occurred here when Oil Prospecting License 230 was converted to Oil Mining Lease 114). *See id.* at 12656.

### 5. **The Most Analogous Case Law.**

Considering these pleadings and the evidence, we find the facts and circumstances here most analogous to those in *Kelly Oil Co., Inc. v. Svetlik,* 975 S.W.2d at 763–64, and *Carmichael v. Delta Drilling Co.,* 243 S.W.2d at 459–60. In *Kelly Oil,* Svetlik received an assignment of an overriding royalty interest in some oil and gas leases in Mississippi. 975 S.W.2d at 763. However, he never received the fruits of the lease because the defendants claimed the leases were terminated by cessation of operations clauses; apparently, one of the production lines ruptured, causing production to cease until its repair. After being informed the leases were terminated, a new production group, Kelly Oil, negotiated new leases, conditioned on the termination of the leases under which Svetlik had his royalty interest. Kelly Oil began to produce oil and gas from the leases, and Svetlik sued. The court found that "the determinative issue in the lawsuit involves an adjudication of interests in real property located outside of the State of Texas ..." because "a royalty interest in an oil and gas lease is an interest in real property...." *Id.* at 764. Even though Svetlik sued for breach of contract and conversion, "the validity of Svetlik's claims hinged upon a finding that the original oil and gas leases through which Svetlik claimed, were still in existence." *Id.* In short, because interests in oil leases are synonymous with interests in real property, and Texas courts have no authority to adjudicate interests in real property outside Texas, the court had no authority to adjudicate interests in Mississippi oil leases. *See id.*

The same conclusion was reached in *Carmichael v. Delta Drilling.* In that case, Delta Drilling supplied former employees with two drilling rigs to prospect for oil and gas in Illinois, Indiana, and Kentucky. 243 S.W.2d at 458. Delta Drilling and the former employees signed a joint operating agreement providing that the two parties would divide the production profits. Later, the former employees sued, claiming that they were not paid their share and that Delta entered into an oral agreement to convey an undivided one-fourth interest in a certain lease in Indiana. *Id.* at 459. The former employees claimed that their suit was not for title to the lease, but instead was for an accounting of the oil

produced from the lease and specific performance to convey the interest in the lease to them. They claimed twenty-five percent of the value of the oil sold from the lease. Delta Drilling responded that the real nature of the suit was to determine title to the lease. *Id.* at 459–60. The *Carmichael* court held that the former employees had no claim to the value of twenty-five percent of the oil unless they were entitled to a one-fourth interest in the lease, which in turn required a finding of who owned the lease. *Id.* at 460. Thus, the court held it had no subject matter jurisdiction, because an interest in an oil and gas lease is an interest in property, the lease was in Indiana, and Texas courts have no "jurisdiction to adjudicate title to land[/leaseholds] in another state." *Id.*

We perceive only two differences between this appeal and *Kelly Oil* and *Carmichael*: (1) *Kelly Oil* and *Carmichael* involved oil and gas leases in the continental United States, while this appeal involves an oil and gas lease in Nigeria; and (2) the *Kelly Oil* and *Carmichael* leases were on land, while the lease in this appeal is in waters off the Nigerian coast. Otherwise, the issues are the same. Trutec claims it received a ten percent interest in an oil and gas lease but has not seen any of the fruits of that ten percent interest. This is precisely what the plaintiffs and *Kelly Oil* and *Carmichael* insisted. *See Kelly Oil*, 975 S.W.2d at 764–65; *Carmichael*, 243 S.W.2d at 459–60.

■ Consequently, having reviewed the pleadings and the evidence pertinent to the jurisdiction, we hold that Trutec's suit requires the adjudication of property interests outside the State of Texas. The trial court lacked jurisdiction to hear the case and correctly dismissed it for lack of subject matter jurisdiction. *See Kelly Oil*, 975 S.W.2d at 764; *Carmichael*, 243 S.W.2d at 460; *see also Miller*, 715 S.W.2d at 786–89

(holding that suit to determine whether title to mineral rights in Oklahoma passed through a will required adjudication of title to Oklahoma property which Texas courts have no jurisdiction to consider); *Hayes*, 821 F.2d at 286–90 (holding Texas district court lacked subject matter jurisdiction over lessee's action against assignee to terminate assignee's interest in Colorado oil and gas lease).

## C. TRUTEC'S PROTESTATIONS TO THE CONTRARY.

Although we find that the facts alleged in the pleadings, the causes of action, and the contract signal claims based on a property interest, Trutec steadfastly maintains that the "principal relief [it] requested was the trial court's determination of issues arising from an agreement ..., not issues specific to Nigerian real property." And, to provide that relief, the trial court needed only to "construe the terms of the agreement and to consider Appellees' actions related to the agreement." Trutec relies primarily on two cases, *Hartman v. Sirgo Operating, Inc.*, 863 S.W.2d 764 (Tex.App.-El Paso 1993, writ denied), and *McDowell v. McDowell*, 143 S.W.3d 124 (Tex.App.-San Antonio 2004, pet. denied), which it contends are on point. We are of the opinion that the situations in *Hartman* and *McDowell* are fundamentally different from the facts in this appeal.

### 1. The Cases Trutec Cites in Opposition to Kelly and Carmichael Involve Different Issues.

In *Hartman*, Sirgo and Hartman's representative entered into a letter agreement in 1990 in which Sirgo agreed to obtain an oil and gas property owned by ARCO that would be exchanged for Hartman's interest in an oil producing property in New Mexico. When the agreement's promises were not fulfilled, Sirgo sought a declaration of the parties' rights under the 1990

letter agreement. The *Hartman* court itself succinctly chronicles the differences between *Hartman*, on the one hand, and *Carmichael* and *Kelly*, on the other, pointing out that *Hartman* involved neither specific performance of an agreement to convey mineral rights nor a determination of ownership in mineral rights. *Hartman*, 863 S.W.2d at 766–67.

> Unlike the suit in *Carmichael v. Delta Drilling Co.*, this suit was not filed seeking specific performance of the parties' agreement. And unlike *Miller v. Miller*, 715 S.W.2d 786 (Tex.App.-Austin 1986, writ ref'd n.r.e.), this suit did not seek to determine ownership of mineral rights located in another state. The trial court had jurisdiction to determine if certain conditions precedent had been met and if the contract was valid and if the parties' obligations were valid and enforceable.

*Id.* at 767.

Trutec's second case, *McDowell*, similarly involves different issues. There, the court considered a dispute between brothers over the formation of a partnership to purchase real property located in Florida. *McDowell*, 143 S.W.3d at 126–27. The fraternal dispute was sparked when one of the brothers sold the business and its assets—which included real estate—without giving the other brother the fifty percent he claimed he was due. Thus, the central issue was not an interest in realty, but an interest in the partnership itself and ultimately a part of the proceeds of the sale of the partnership's assets. *Id.* at 127. The

court of appeals held that the trial court had subject matter jurisdiction because the central issue in the case was the existence of a partnership, not title to land. *Id.* at 127.

Other cases cited by Trutec are likewise distinguishable. *See Finder v. O'Connor*, 615 S.W.2d 283 (Tex.Civ.App.-Dallas 1981, writ dism'd) (venue case in which principal relief sought was not for recovery of an interest in land but to establish a joint venture); *Miller v. Howell*, 234 S.W.2d 925 (Tex.Civ.App.-Fort Worth 1950, no writ) (venue case in which review of petition reflected suit was an equitable proceeding for a partnership accounting); *Sax v. Sax*, 294 F.2d 133 (5th Cir.1961) (Florida suit to set aside allegedly fraudulent supplemental trust agreement held to be an in personam, transitory suit to undo a fraudulent conveyance of out-of-state property).[8]

## 2. This Suit Does Not Involve a Mere Claim of a Right to Oil Severed From Realty.

In a second attempt to keep its claims from being labeled claims to interests in out-of-state property, Trutec contends that the trial court erred in dismissing its suit because its claims relate to personal property rather than to real property. Specifically, Trutec contends its claims relate to oil severed from realty.[9]

Trutec asserts that the interest it seeks is a claim for personal property because it sued for production and proceeds from the oil severed from the ground, which is personal property. Trutec points to certain

8. Similarly, in other cases cited by Trutec, the issue was not who owned the property or an interest in the property, but whether a party's property could be turned over as a remedy to enforce a personal obligation. *See Lozano v. Lozano*, 975 S.W.2d 63, 68 (Tex.App.-Houston [14th Dist.] 1998, pet. denied) (Texas court could order turnover of real property in Mexico to satisfy judgment); *Reeves v. Fed. Sav. &*

*Loan Ins. Corp.*, 732 S.W.2d 380, 382 (Tex. App.-Dallas 1987, no writ) (Texas court could order turnover of indicia of ownership of property in Portugal to receiver).

9. Trutec's argument that its claims relate to an interest in a partnership was not raised below, and thus is waived.

language in some of the documents and in its petition referencing hydrocarbon production and proceeds, and argues that when its petition is reviewed "liberally and as a whole, and its allegations accepted as true," it sought an interest in personal property—the production and proceeds derived from Oil Prospecting License 230, which it contends Western Atlas et al. converted.

For support, Trutec cites established case law standing for the proposition that "once severed from the realty, gas and oil, like other minerals, become personal property." *See, e.g., Humble Oil & Ref. Co. v. West,* 508 S.W.2d 812, 817 (Tex.1974); *see also Amoco Prod. Co. v. Wood,* 113 S.W.3d 462, 466 (Tex.App.-Texarkana 2003, no pet.); *Rogers v. Ricane Enters., Inc.,* 930 S.W.2d 157, 165 (Tex.App.-Amarillo 1996, writ denied); *Phillips Petroleum Co. v. Mecom,* 375 S.W.2d 335, 339 (Tex.Civ. App.-Austin 1964, no writ). Trutec also cites cases providing that proceeds from the sale of oil or oil produced and severed from the land may be converted. *See, e.g., Santanna Natural Gas Corp. v. Hamon Operating Co.,* 954 S.W.2d 885, 892 (Tex. App.-Austin 1997, pet. denied); *W.B. Johnson Drilling Co. v. Lacy,* 336 S.W.2d 230, 233 (Tex.Civ.App.-Eastland 1960, no writ)

But, even if it is correct that minerals, once severed, become personal property, that is not the issue in this suit. Here, Trutec has no claim to the oil either in the ground or removed from the ground unless it owns the real property mineral rights. The same is true for its conversion claim. Before any of Trutec's claims for damages may be evaluated, a court must determine Trutec's ownership interest in Oil Pros-

pecting License 230 and in the subsequent oil mining lease. Because the interests are located in Nigeria, not Texas, a Texas court has no authority to consider this issue, and we overrule Trutec's second issue.

**3. The Rights Granted by the License are not a Privilege, but are Similar to Rights Conveyed by an Oil and Gas Lease.**

In its third and last issue, Trutec tries again to characterize its claims as non-real property interests. It contends that another reason the trial court erred in dismissing its suit was that the rights granted by a license are a privilege, not an interest in property. Specifically, Trutec contends a license is merely a privilege to go on land for a certain purpose, while a lease confers an interest in or title to property.[10]

We also find this argument regarding licenses unconvincing. It requires us to suspend the realities of this case and to consider instead situations quite unlike this one. To illustrate, Trutec cites several Texas cases in which licenses are distinguished from real property interests. They involve the following:

● a food and beverage concession in an airport, *H.E.Y. Trust v. Popcorn Express Co.,* 35 S.W.3d 55, 58 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (holding food and beverage concession contract with airport was a license and not a lease of real estate for purposes of the Real Estate License Act);

● an access license versus an easement, *Samuelson v. Alvarado,* 847 S.W.2d 319, 323 (Tex.App.-El Paso 1993, no writ) (distinguishing an easement

---

**10.** Trutec also takes the position that it is immaterial that the oil prospecting license, Oil Prospecting License 230, was converted to the oil mining lease, Oil Mining Lease 114—

which it concedes is an interest in real property—because, as it has argued throughout its brief, the presence of real property is not dispositive of this suit.

from an "access license" in dispute over an easement);

- a hunting lease granting the right to hunt, *Digby v. Hatley*, 574 S.W.2d 186, 190 (Tex.Civ.App.-San Antonio 1978, no writ) (stating that hunting "lease" was more in the nature of a license granting a right or privilege to hunt on property that conveys no interest in or title to the property concerned); and

- a license for restaurant customers to use an adjoining owner's driveway, *Joseph v. Sheriffs' Ass'n*, 430 S.W.2d 700, 703–04 (Tex.Civ.App.-Austin 1968, no writ) (holding that under facts of case appellant acquired only a license for restaurant customers to use driveway on adjoining property rather than an easement).

None of these situations is remotely similar to the Nigerian Government's license to prospect for oil.

To repeat, that license essentially was an oil and gas lease, allowing the producer to drill for oil and to obtain a mining lease if sufficient quantities of oil were discovered and successfully produced.

In light of these facts, we decline Trutec's invitation to compare the Nigerian government's broad grant of authority to prospect for oil with a limited right of access to use property for activities such as a food and beverage concession, hunting, or use of a driveway. We do not find the rights granted under the Petroleum Act in any way "analogous to those Texas cases relating to the contractual rights of owners of coin-operated vending machines" as was the situation in *H.E.Y. Trust v. Popcorn Express Co.*, relied on by Trutec. *See* 35 S.W.3d at 58.

We overrule Trutec's third issue.

## D. CONCLUSION

In summary, although Trutec's brief was well-crafted and Trutec did its best to distance its suit from the general rule that Texas courts cannot adjudicate interests and title in non-Texas real property, we find that the general rule applies to Trutec's claims. Trutec's lawsuit required the trial court to determine if Trutec had an ownership interest in real property located outside the State of Texas. The trial court correctly concluded it had no jurisdiction to resolve the issues Trutec raised in its lawsuit. We overrule Trutec's issues and affirm the trial court's judgment.