2025 Tex. Bus. 12



The Business Court of Texas,
1st Division

| | | |
|---|---|---|
| TARGA NORTHERN DELAWARE, LLC, *Plaintiff* <br><br> v. <br><br> FRANKLIN MOUNTAIN ENERGY 2, LLC (n/k/a COTERRA ENERGY OPERATING M LLC) and FRANKLIN MOUNTAIN ENERGY, LLC (n/k/a COTERRA ENERGY OPERATING F LLC), *Defendants* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Cause No. 24-BC01B-0001 |

## MEMORANDUM OPINION

[¶ 1]  Before the court is defendants' Second Amended Plea to the Jurisdiction (PTJ).[1]  They assert that this court lacks subject matter

---

[1] Defendant filed its initial Amended Plea to the Jurisdiction on January 28, 2025, with redactions and sealed exhibits.  Defendants refiled their plea on February 26, 2025, without redactions and with public exhibits.  Defendants styled their February twenty-sixth

jurisdiction because this case is about who owns natural gas in the ground in New Mexico, which is real property, and this court lacks jurisdiction to decide that dispute.[2]

[¶ 2] Conversely, plaintiff urges that this court has subject matter jurisdiction because its sole cause of action seeks damages for defendants' alleged failure to deliver severed natural gas, which is personalty, and Texas has jurisdiction to resolve that contract breach claim even if the result may have collateral effects regarding New Mexico real property.

[¶ 3] Defendants' plea fails because the seminal issue is who materially breached the contract first regarding the delivery of severed natural gas. If defendants did so, recovering damages is plaintiff's remedy. But if plaintiff did so, defendants' remedy is for the court to order plaintiff to release its rights regarding the subsurface gas, which is realty.

[¶ 4] In short, this case will factually decide who first materially breached its duty regarding the delivery of severed natural gas. Any subsequent effect that decision may have on the ownership of native natural

motion as its "Amended Plea to the Jurisdiction." The court refers to the latter document as Defendants' Second Amended Plea to the Jurisdiction.

[2] PTJ at 5.

gas in New Mexico is incidental and collateral to that outcome. Therefore, this court has jurisdiction to resolve the prior material breach dispute.

[¶ 5] These facts are taken from Plaintiff's Second Amended Petition and the parties' contract unless indicated otherwise:

## I. BACKGROUND

### A. The Parties

[¶ 6] Plaintiff Targa Northern Delaware, LLC is a midstream company that operates natural gas gathering and compression facilities.[3]

[¶ 7] Defendants Franklin Mountain Energy 2, LLC and Franklin Mountain Energy, LLC's (FME) are two upstream oil and natural gas exploration and production companies.[4]

### B. The Agreement

[¶ 8] Effective June 1, 2021, the parties entered into an Amended and Restated Gas Gathering, Processing and Purchase Agreement.[5] In general, the

---

[3] PTJ at 6.

[4] PTJ at 6. Franklin Mountain Energy 2, LLC is now known as Coterra Energy Operating M LLC and Franklin Mountain Energy, LLC is now known as Coterra Energy Operating F LLC. However, the parties and the court continue to refer to defendants singularly as FME.

[5] SAP ¶ 9; PTJ Ex. 1 (Agreement). They further amended the Agreement on March 1, 2022, and February 1, 2024. SAP ¶ 9.

Agreement provides that:

- FME granted, conveyed, assigned, and dedicated to Targa for gathering and processing certain natural gas produced from and attributable to FME's "Interests."[6]

- "Interests" means any of FME's right, title, or interests in lands or wells located in "Dedicated Acreage" that provide FME with the right to produce, transport, and market Gas produced from the Dedicated Acreage.[7]

- "Dedicated Acreage" means lands in New Mexico specified in a separate Agreement exhibit.[8]

- "Gas" means natural gas or any mixture of hydrocarbon gases or of hydrocarbon gases and noncombustible gases, consisting predominantly of methane.[9]

- "Committed Gas Interests" means all of FME's Gas in place under Dedicated Acreage.[10]

---

[6] Agreement Art. 2.1. "Art." refers to a specific Article in the Agreement.

[7] Agreement Ex. A, § 1.01(vv).

[8] Agreement Ex. A, § 1.01(cc); Agreement Ex. E.

[9] Agreement Ex. A, § 1.01(nn).

[10] *See* Art. 2.1(i)(a) ("Gas … which *may be produced* from and be attributable to such Interests") (emphasis added).

- "Committed Gas" means all Gas that FME produces from the Committed Gas Interests.[11]

- FME is to produce Committed Gas and, except for Gas taken in kind, deliver it to Targa at designated "Receipt Points."[12] In turn, Targa agreed to purchase that delivered Committed Gas.[13]

- If Targa curtails or cannot accept all of FME's delivered Committed Gas and there are no uncured FME defaults, then (i) the affected volumes are released from the Agreement for as long as the curtailment or inability lasts and (ii) FME is free to sell that affected volume to others.[14]

- If Targa's curtailment or inability to accept deliveries continues for certain specified time periods and there are no uncured FME defaults, in addition to its temporary release rights above, FME is entitled to receive from Targa a permanent release of the affected Committed Gas volumes and the "reasonably associated" Committed Gas Interests; if provided FME exercised

---

[11] *See* Art. 2.1(i)(b).

[12] Arts. 2.1, 2.3. The parties redacted the Agreement's "Receipt Point" definition, but it is understood to be an identified location to where FME is to deliver Committed Gas.

[13] Arts. 2.1, 2.3. The purchase price is not relevant to deciding FME's PTJ.

[14] Art. 2.4 (Temporary Release).

that right in writing within specified time periods and did not waive its release right for that specific curtailment.[15]

• Notwithstanding any other Agreement provision, "title to the Interests shall remain in Seller or its Affiliates, as the case may be."[16]

• FME's release rights "are the sole and exclusive remedies at law or in equity available to [FME] with respect to such affected volumes or [Targa's] curtailment of or inability to accept such volumes, and [FME] irrevocably waives and releases any other rights or remedies."[17]

• While in effect, the Agreement is (i) a covenant running with the subject Interests within the Dedicated Acreage and (ii) binding on FME and its successors in interest.[18]

• The parties are to record in the appropriate property records a written memorandum identifying the Dedicated Acreage.[19]

---

[15] Art. 2.5(a) (Permanent Release).

[16] Art. 2.8.

[17] Art. 2.5(c). Article 2.5(c) also applies to "Force Majeure" events, but force majeure events are not implicated at this point.

[18] Art. 2.7.

[19] Art. 2.9. The Agreement's terms are more detailed than these summaries, but the details are not necessary to resolving FME's plea to the jurisdiction.

- The parties agree that a redacted part of the Agreement required Targa to provide certain additional facilities related to FME's delivery of Committed Gas to additional Release Points.

[¶ 9] According to FME, Targa was unable to "accept *full volumes of natural gas that [FME] attempted to deliver*."[20] So, in June 2022, April 2024, and May 2024, FME asked for either a temporary or permanent release of Targa's interest in the affected gas volumes so that Targa's interest would revert to FME.[21]

## C. Procedural Background

[¶ 10] On September 3, 2024, Targa sued FME alleging that FME breached the Agreement by "*failing . . . to deliver Committed Gas to Targa as required by the Agreement*," and its failure and refusal to do so constitutes a material breach of the Agreement.[22] Targa's requested relief included (i) actual damages, (ii) attorneys' fees, (iii) pre and post-judgment interest, (iv)

---

[20] PTJ at 9 (emphasis added); SAP ¶s 13–14.

[21] PTJ at 9–11.

[22] Plaintiff's Original Petition (Pet.) ¶s 11 (emphasis added), *accord* ¶ 15. Targa carries that allegation through to SAP ¶s 12, 17.

court costs, and (v) all other relief to which it is entitled.[23]

[¶ 11]  Seven weeks later, FME sued Targa in New Mexico seeking declarations that Targa's breach "entitled FME to a permanent release of the affected volumes of gas in place . . . meaning Targa is no longer entitled to own such real property interests and FME is now the rightful owner of said interests free and clear of any ownership or rights by Targa."[24]

[¶ 12]  That same day, FME filed here a plea to the jurisdiction, special appearance, motion to transfer venue, and answer subject to special appearance.  They also sought to file exhibits to their plea to the jurisdiction under seal.  They later withdrew their special appearance, motion to transfer venue, and motion to seal.

[¶ 13]  FME's answer pleads a general denial, denies certain alleged venue facts, and asserts nine affirmative defenses by name only, including failure to perform conditions precedent and prior material breach.

[¶ 14]  On January 24, 2025, Targa filed an amended petition, asserting the same contract breach cause of action alleging FME's failure to deliver

---

[23] Pet. at Prayer.
[24] PTJ Ex. 5 (FME's New Mexico DJ Action), ¶ 27.

Committed Gas and requesting the same remedies.

[¶ 15]  Four days later, FME withdrew its original plea, and filed a public "Amended Plea to the Jurisdiction" asserting that from the beginning Targa was unable to accept full gas volumes that FME attempted to deliver, which resulted in flaring and curtailment of *oil* production.[25]  FME further asserted that it thrice sent Targa letters asking it to (i) permanently or temporarily release gas interests impacted by Targa's alleged performance failures and (ii) provide a form FME could file in the real property records.[26]

[¶ 16]  Targa filed its SAP on February 11, 2024, again asserting the same contract breach cause of action and seeking the same relief.[27]

**D. Parties' Arguments**

[¶ 17]  FME argues that this court lacks subject matter jurisdiction over this case because it is a real property dispute involving mineral interests located exclusively in New Mexico.[28]  FME further urges that the "parties' core dispute is whether Targa retained any interest in the gas, including gas

---

[25] Defendants' January 28, 2025, Amended Plea to the Jurisdiction at 9.

[26] Defendants' January 28, 2025, Amended Plea to the Jurisdiction at 9–11.

[27] *See generally* SAP.

[28] PTJ at 5.

still in the ground and not yet produced, such that [FME] w[as] obligated to deliver it."[29]

[¶ 18]  Targa responds that the Agreement separately conveys (i) FME's interest in gas in place under the acreage, which is a real property interest (Committed Gas Interest), and (ii) gas produced from the acreage, which is a personal property interest (Committed Gas).[30]  Targa adds that this case only concerns the latter, and it is immaterial that FME also conveyed to Targa an interest in the gas in place.[31]

[¶ 19]  FME replies that Targa's right to produced gas derives solely from its interest, if any, in gas in place in New Mexico.[32]  Accordingly, FME argues that to resolve the parties' claims and defenses, the court will need to adjudicate a real property dispute—namely whether Targa ceased being the rightful owner of interests in real property when FME requested a permanent

---

[29] PTJ at 5.

[30] Targa's Response to Amended Plea to the Jurisdiction (Opp.) at 7–8.

[31] Opp. at 16–17.

[32] FME's Reply in support of Amended Plea to the Jurisdiction (Reply) at 2–3.

release as far back as 2022.[33]

## II.   DISCUSSION

### A. Plea to the Jurisdiction

[¶ 20]   A plea to the jurisdiction is a procedural vehicle to challenge a trial court's subject matter jurisdiction. *Texas Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 232 (Tex. 2004) (sovereign immunity challenge). Whether a court has subject matter jurisdiction is a question of law. *Vernco Constr., Inc. v. Nelson*, 460 S.W.3d 145, 149 (Tex. 2015).

[¶ 21]   A plea to the jurisdiction concerns individual causes of action, such that a court may dismiss a cause of action over which it lacks subject matter jurisdiction while retaining other causes of action over which it has jurisdiction in a multi-cause of action case. *Texas Highway Dep't v. Jarrell*, 418 S.W.2d 486, 488 (Tex. 1967). Thus, courts focus on the cause of action, not "the case."

[¶ 22]   When a plea challenges pleadings, courts determine whether the pled facts demonstrate the court's jurisdiction to hear the cause. *Miranda*, 133 S.W.3d at 226. In that context, courts construe the pleadings liberally in

---

[33] Reply at 3–4.

the pleader's favor and look to the pleader's intent. *Id.* Courts deny pleas if the pleading alleges facts demonstrating subject matter jurisdiction. *Id.*

[¶ 23] However, courts must consider relevant evidence when needed to resolve jurisdictional issues. *Id.* at 227. But the court need not consider extraneous evidence here because Targa's second amended petition and the Agreement suffice to resolve FME's plea.

## B. The Local Action Doctrine

[¶ 24] In 1810, the United States Supreme Court established the American principle that a court exercising equity jurisdiction may order persons within the court's personal jurisdiction to execute documents affecting land beyond the court's territorial jurisdiction, because the decree acts on the person and not the land. *Massie v. Watts*, 10 U.S. 148, 160 (1810).

[¶ 25] Thus, it is well-settled that Texas courts lack subject matter jurisdiction to adjudicate title to real property interests located outside of Texas. *Holt v. Guerguin*, 106 Tex. 185, 188–89, 163 S.W. 10, 12 (1914); *Trutec Oil And Gas, Inc. v. W. Atlas Int'l, Inc.*, 194 S.W.3d 580, 583–84 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (interests in Nigerian oil and gas

leases).

[¶ 26]   But it is equally well-settled that a Texas court can order persons within its jurisdiction to execute documents that effect title to property located in other states or countries.  *Holt*, 163 S.W. at 189; *Phoenix Energy, Inc. v. Breitling Royalties Corp.*, No. 05-14-01153-CV, 2014 WL 6541259, *1–2 (Tex. App.—Dallas Oct. 17, 2014, no pet.); *In re Elamex, S.A. de C.V.*, 367 S.W.3d 891, 897–98 (Tex. App.—El Paso 2012, no pet.).  In those situations, the court's decree is made effectual by whatever coercive effect the rendering court's decision may have over the defendant, for example, contempt or collateral estoppel.  163 S.W. at 189.

[¶ 27]   The determining issue is (i) whether the court must first resolve an issue involving title to realty in another state before awarding the claimant's requested relief or (ii) whether the effect on that realty is an incidental consequence of granting that relief.  *See Coughran v. Nunez*, 127 S.W.2d 885, 887–88 (Tex. Comm'n App. 1939, opinion adopted) (county court lacked jurisdiction to restrain interference with pipeline); *Merit Mgt. Partners I, L.P. v. Noelke*, 266 S.W.3d 637, 647–48 (Tex. App.—Austin 2008, no pet.) (determining whether lease applied a predicate to cause of action to

recover attorneys' fees).

[¶ 28] That is,

> If the right of recovery in a suit depends, at least in part, upon the title to land, but there is no real dispute between the parties over the question of title, the question of title is incidental.

*Merit Mgt.*, 266 S.W.3d at 648; *see also In re Elamex, S.A. de C.V.*, 367 S.W.3d at 898 ("A lawsuit involves the adjudication of title to real property if title is not involved in a merely incidental or collateral way, but is actually involved as the basis, as well as the measure of right of any recovery").

## C. Severed natural gas is personal property.

[¶ 29] At common law, native natural gas is real property that becomes personal property when produced. *Hill v. Enerlex, Inc.*, 969 S.W.2d 120, 122 (Tex. App.—Eastland 1998, pet. denied) (*citing Humble Oil and Refining Co. v. West*, 508 S.W.2d 812, 817 (Tex. 1974); *Lone Star Gas Co. v. Murchison*, 353 S.W.2d 870, 879 (Tex. Civ. App.—Dallas 1962, writ ref'd n.r.e) ("There can be no doubt that gas which has been produced is personal property.").

[¶ 30] In *West*, the supreme court discussed *Murchison's* reasoning and reiterated that severed gas is personalty.[34] 508 S.W.2d at 817–18. Thus, since

---

[34] *Murchison* discusses the reasons for treating severed natural gas as personalty based on improved knowledge concerning subsurface oil and gas reservoirs. 353 S.W.2d at 876–78.

at least *West*, the Texas Supreme Court has recognized the common law principle that severed natural gas becomes personal property and remains personal property even if it is injected into a storage reservoir. *See, e.g., id.*; *Hill*, 969 S.W.2d at 122.

[¶ 31]  Texas's Business and Commerce Code embodies the common law rule as applied to contracts for the sale of natural gas to be severed by the seller:

> A contract for the sale of minerals or the like (including oil and gas) or a structure or its materials to be removed from realty is a contract for the sale of goods within this chapter if they are to be severed by the seller but until severance a purported present sale thereof which is not effective as a transfer of an interest in land is effective only as a contract to sell.

Tex. Bus. & Comm. Code § 2.107(a).

[¶ 32]  The Official Comments emphasize that minerals that "are to be severed by the seller" are contracts for the sale of goods—and not to be considered contracts affecting land and thereby implicating all problems of the statute of frauds, the recording, land rights, or other laws concerning real property interests. *Id.*, Official Comment 1.

[¶ 33]  Professor William Hawkland explained that § 2.107 "mediates the line between personal property, i.e., goods, and real property." 1 Hawkland

UCC Series § 2-107:1. He further explained that the transition occurs when the seller severs the natural gas and thus identifies it to the contract. *Id.* This dividing line is needed to determine when contracts dealing with natural gas are real property subject to real property laws like the statute of frauds, and when it is personal property subject to Article 2. *See id.*

[¶ 34]   Here, the Agreement requires FME to sever and sell Committed Gas to Targa and deliver it to Targa at designated Receipt Points:

> Sale of Committed Gas. From and after the Effective Date and for the Term, [FME] agrees to sell and deliver to [Targa] all Committed Gas *produced* from the Dedicated Acreage, and [Targa] agrees to purchase from [FME] at the Receipt Points each Day all Committed Gas delivered by [FME], in each case, subject to and otherwise in accordance with the other terms and conditions of this Agreement.[35]

[¶ 35]   That is, the Agreement required FME to deliver severed natural gas to Targa at specific locations so that Targa could process and ultimately sell the gas to third parties.[36]   So, Article 2.3 has the appearances of a § 2.107 sale of goods contract.

[¶ 36]   Further, FME's plea concedes that FME is to sever and deliver

---

[35] Art. 2.3 (emphasis added).
[36] *See* PTJ at 6.

the gas by asserting that FME had to flare gas and curtail oil production due to Targa's alleged inability *to accept* full volumes of natural gas that FME *attempted to* deliver.[37]

[¶ 37]  Moreover, it is undisputed that FME is the mineral interest lessee and the producer that severs the gas from the ground.[38]  It is also undisputed that FME "produce[s] the gas.  And then they contract with midstream companies like Targa to take the gas, gather it, process it, put it in place so they can then go to market."[39]

[¶ 38]  Separately, the parties agree that midstream companies also want a conveyance like the *separate* Committed Gas Interest (gas in place), which conveys a real property interest, to protect themselves should the property get sold or the producer go bankrupt and attempt to reject the contract, which causes the midstream to lose the gas source.[40]  *See generally, In re Sabine Oil & Gas Corp.*, 550 B.R. 59, 65–68 (Bankr. S.D.N.Y. 2016) (Debtor permitted to reject dedication of severed natural gas because it was

---

[37] PTJ at 9.

[38] Feb. 27, 2025, Rough Tr. at 10–11 (Tr.).

[39] Tr. at 11.

[40] Tr. at 12, 28–29.

not a covenant running with the land.).

[¶ 39]  Finally, Targa's sole cause of action seeks to recover damages for FME's alleged failure to deliver severed Committed Gas per the Agreement.[41]  Conversely, FME posits that Targa's right to Committed Gas derives from FME's conveyance of Committed Gas Interests to Targa that, according to FME, Targa was required to release as far back as 2022 due its failure to accept FME's gas.[42]

**D. Realty v. Personalty**

[¶ 40]  The court asked the parties to brief Business and Commerce Code § 2.107's application here.  Targa argued that whether that statute applies is not determinative because its sole cause of action concerns FME's alleged failure to deliver severed natural gas, and severed natural gas is personal property under both the common law and § 2.107.[43]

[¶ 41]  On the other hand, FME argues that the Agreement's predominant purpose is the conveyance of natural gas in the ground; thus, the

---

[41] SAP at 6–9.

[42] Reply at 4.

[43] Plaintiff's Supplemental Brief Related to Defendants' Amended Plea to the Jurisdiction, *passim*.

dispute is one regarding real property.[44]  That is, according to FME the Agreement requires Targa to construct infrastructure and provide gathering and processing services for gas produced from the dedicated interests.[45]  FME further argues that, "[a]lthough the Agreement also provides for the sale of 'Committed Gas' 'attributable to' those interests, by definition Committed Gas is only gas produced from real property in which Targa has an interest."[46] Thus, FME urges that the Agreement is predominantly one for the exchange of real property interests for services.[47]

**E. FME Cases**

[¶ 42]   FME further argues that Texas courts consistently hold that gas dedication agreements are real property transactions and that § 2.107 and the common law severed gas rule do not apply.[48]  However, those cases reflect the accepted point that minerals in place are realty. *Hill*, 969 S.W.2d at 122.  None of them included a conveyance for severed gas (*i.e.*, Committed Gas) separate

---

[44] Defendants' Supplemental Brief on the Applicability of UCC Chapter 2, *passim* (FME Supp. Br.).

[45] FME Supp. Br. at 5.

[46] FME Supp. Br. at 5.

[47] FME Supp. Br. at 5.

[48] FME Supp. Br. at 14–16.

from a conveyance of gas in place (*i.e.*, Committed Gas Interests).

### 1. *American Refining,* *Kinder,* **and** *Guffey.*

[¶ 43]  In *American Ref. Co. v. Tidal W. Oil Corp.* the court concluded that a fair construction of the contract at issue shows that the parties "were dealing with the gas in place," meaning realty.  264 S.W.335, 339 (Tex. Civ. App.—Amarillo 1924, writ ref'd).  While FME goes on to rely on the opinion's statement that severing gas from the ground "does not, as a general rule, change its character from real to personal property," *id.* at 340, the supreme court rejected that premise no later than in *West.*  508 S.W.2d at 817–18.

[¶ 44]  In *U.S. Pipeline Corp. v. Kinder* the court affirmed a judgment cancelling a contract for failure to comply with the statutes of frauds and conveyances.  609 S.W.2d 837, 839–40 (Tex. Civ. App.—Fort Worth 1980, writ ref'd n.r.e.).  The operative language referred to gas that "may be" produced in the future, which the court concluded refers to currently unproduced gas.  Because unproduced gas is realty, the statute of frauds negated the contract.  *Id.*

[¶ 45]  Likewise, *Guffey v. Utex Expl. Co.* concerned "the sale of gas in place, which is part of the real estate," and therefore an oral contract failed the

statute of frauds. 376 S.W.2d 1, 4 (Tex. Civ. App.—San Antonio 1964, writ ref'd n.r.e.).

[¶ 46] These cases discuss a variety of other cases where courts reached apparently conflicting results. These conflicts concerning when a gas sale contract concerns the sale of realty or personalty illustrate why the legislature adopted a bright line rule in Business and Commerce Code § 2.107 for distinguishing whether such contracts involve realty rather than personalty. *See* TEX. BUS. & COMM. CODE, § 2.701; Official Comment 1 to § 2.107; 1 Hawkland UCC Series § 2-107:1.

### 2. *In re Sanchez.*

[¶ 47] FME's reliance on *In re Sanchez Energy Corp.*, 631 B.R. 847 (Bankr. S.D. Tex. 2021) is misplaced as it supports Targa. *Sanchez* does so by holding that contracts granting covenants running with the land, which are non-rejectable real property interests, may also contain other executory promises of future performance that are not real property interests that debtors may reject. *Id.* at 859–61. The same analysis applies here where the Agreement contains (i) a conveyance of interests in the Committed Gas Interests and (ii) a separate agreement for the sale of FME's severed

Committed Gas. The former involves a conveyance of realty, but the latter does not. *See id.*

### 3. *Trutec*

[¶ 48] Finally, FME's reliance on *Trutec* is misplaced.[49] Specifically, FME argues that "[j]ust like Targa, Trutec argued that its claim was for personal property because it sought produced oil."[50] However, that court concluded that Trutec's core complaint was that it had been "wrongfully deprived of its interest in [an] oil producing license," which was an interest in real property, and that Trutec had "no claim to the oil . . . unless it owns the real property mineral rights." 194 S.W.3d at 585, 590. The present case differs from *Trutec* because the Agreement contains a distinct dedication of severed Committed Gas to Targa separate from the real property interest in Committed Gas Interests.

## F. Which party materially breached first is the pivotal issue.

[¶ 49] It is undisputed that (i) Article 2.1 has two main components: the dedication and conveyance of Committed Gas Interest (real property) to

---

[49] PTJ at 15–16; Reply at 7–8; Tr. at 14–15.
[50] Reply at 8.

Targa and a separate agreement for FME to sever gas under the Committed Gas Interests and deliver that Committed Gas (personal property) to Targa at specific points;[51] (ii) there are no real property law issues regarding the dedication's terms, effects, or validity because Targa concedes those points; and (iii) FME's remedy if it wins is for the court to order Targa to provide a permanent release for affected Committed Gas Interests, *see Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (prior material breach excuses counterparty's duty to further perform).

[¶ 50]  Thus, the pivotal issue is which party first materially breached the Agreement's delivery duties: FME for failing to deliver required Committed Gas to Targa, or Targa for refusing to provide a permanent release of its interests because it did or could not accept the Committed Gas?  That dispute centers on the personal property Committed Gas and only collaterally and incidentally implicates the real property Committed Gas Interests.

[¶ 51]  FME's New Mexico complaint does not change this result.  FME does not allege that Targa lost its ownership in any real property interest as far

---

[51] The court need not decide at this point whether the common law or § 2.701 provides the controlling principle because the result is the same either way.

back as 2022.[52]  Instead, FME seeks declaratory relief that "Targa *is no longer* entitled to own such real property interests" and that title should be quieted in favor of FME today.[53]  Nor could FME argue otherwise as Article 2.5(c) provides that "the sole and exclusive remedies at law and equity" available to it if Targa fails to accept Committed Gas is to obtain a release under Articles 2.4 or 2.5(a), which FME concedes never occurred.[54],[55]  So, FME puts the cart before the horse by arguing its defense to Targa's claims deprives the court of jurisdiction.  *Merit Mgt.*, 266 S.W.3d at 648.

[¶ 52]  So, *Coughran v. Nunez* controls FME's Plea because (i) any effect that a favorable finding for Targa might have regarding  New Mexico real property interests would be collateral and incidental to this court's judgment

---

[52] Opp. at 4.

[53] PTJ Ex. 5, ¶ 52 (emphasis added).

[54] Opp. at 9–11.

[55] FME cautions that "a court may not weigh the merits in deciding subject matter jurisdiction."  Reply at 6 (citing *Trutec*, 194 S.W.3d at 584).  However, the cases upon which that citation depends make clear that the rule is intended to protect *plaintiffs*, not defendants.  As the supreme court stated in *Bland Independent School District v. Blue*, "the proper function of a dilatory plea does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction."  34 S.W.3d 547, 554 (Tex. 2000).  The court cannot ignore the plain language of the Agreement and the admitted fact that no permanent release was ever provided by Targa to FME.  Therefore, the plain conclusion is that Targa still holds the rights and interests originally conveyed to it.

and (ii) a resulting judgment against Targa will have a coercive effect on it. 127 S.W.2d at 886–88; *Merit Mgt.,* 266 S.W.3d at 647–48.

### III.    CONCLUSION

[¶ 53]   For these reasons, the court signed its March 21, 2025, order denying FME's Second Amended Plea to the Jurisdiction.

BILL WHITEHILL
Judge of the Texas Business Court,
First Division

SIGNED:  March 28, 2025

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 99012478
Filing Code Description: No Fee Documents
Filing Description: Memorandum Opinion on Plea to Jurisdiction
Status as of 3/28/2025 11:35 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| David W.Jones | | djones@beckredden.com | 3/28/2025 11:28:47 AM | SENT |
| Timothy S.McConn | | tmcconn@yettercoleman.com | 3/28/2025 11:28:47 AM | SENT |
| Garrett S.Brawley | | gbrawley@beckredden.com | 3/28/2025 11:28:47 AM | SENT |
| Samantha Richey | | srichey@yettercoleman.com | 3/28/2025 11:28:47 AM | SENT |
| Bonnie C.Fraase | | bfraase@yettercoleman.com | 3/28/2025 11:28:47 AM | SENT |
| Jared  LeBrun | | jlebrun@yettercoleman.com | 3/28/2025 11:28:47 AM | SENT |
| Business Court 1B | | BCDivision1B@txcourts.gov | 3/28/2025 11:28:47 AM | SENT |
| Audrey Hendricks | | ahendricks@yettercoleman.com | 3/28/2025 11:28:47 AM | SENT |
| Alyssa Smith | | asmith@yettercoleman.com | 3/28/2025 11:28:47 AM | SENT |