DANISH LEASEGROUP, INC., Appellant,

v.

YORK OIL & GAS MANAGEMENT, INC., OAG Resources, Inc., and Christer Gustafsson, Appellees.

No. 05–11–00058–CV.

Court of Appeals of Texas, Dallas.

Feb. 29, 2012.

Mark T. Josephs, Mark T. Hollan, Jackson, Walker, L.L.P., Dallas, for Appellant.

Byron C. Keeling, Ruth B. Downers, Keeling & Downes, P.C., Houston, TX, Gregory M. Sudbury, Quilling, Selander, Lownds, Winslett & Moser P.C., C.W. Flynn, Locke Purnell Rain & Harrell, Ka-

rolyn King Gillespie, Seth Michaels Roberts, Locke Lord Bissell & Liddell LLP, Dallas, TX, for Appellees.

Before Justices BRIDGES, O'NEILL, and FILLMORE.

## OPINION

Opinion By Justice O'NEILL.

Appellant Danish Leasegroup, Inc. appeals the trial court's order granting appellees York Oil & Gas Management, Inc., OAG Resources, Inc., and Christer Gustafsson's pleas to the jurisdiction. In a single issue, appellant argues its claims involving interests in oil and gas leases in Kentucky are transitory, rather than local, and may be brought in Texas. Thus, it contends the trial court had subject matter jurisdiction and erred by granting appellees' pleas to the jurisdiction. We disagree and affirm the trial court's order.

### Background

OAG is a Colorado business that operates oil and gas leases and sells interests in the leases to Texas residents. Appellant is a Texas corporation that engaged in business dealings with OAG.

According to appellant's pleadings, appellant met with OAG and York, through its representatives Gustafsson and Mikael Eliasson.[1] During this meeting, appellant was offered certain working interests in oil and gas leases in Kentucky.[2] Representations regarding the working interests were made through in person communications, telephone conferences, and emails.

Appellant accepted OAG and York's offer to sell the Kentucky working interests, and in reliance on the representations, it paid OAG $750,000 through a wire transfer. Appellant believed OAG would use the funds to purchase certain working interests for its benefit. Appellant further alleged OAG accepted its payment and sent statements showing its working interests in the leases. Appellant received a percentage of income associated with the working interests and in turn, distributed the funds to its investors. When appellant later sought assurance from York and OAG regarding its title to the Kentucky working interests, it alleges OAG and York said they had not transferred title to the interests and denied any agreement with appellant to do so.

Appellant asserts OAG and York failed to transfer title to the working interests it purchased. Instead, it received "a vague interest which is not enforceable, transferable, or capable of being valued." Appellant claims it did not receive what OAG and York offered for sale and what it agreed to purchase.

In its original petition, appellant brought claims against OAG, York, Eliasson, and Gustafsson for civil conspiracy, Federal Securities Act of 1933 violations, and Texas Securities Act violations. It brought claims of statutory fraud, common law fraud, negligent misrepresentation, and

---

1. Eliasson is not a party to this appeal.

2. In its brief, appellant states in a footnote, "Through the passage of time and the acquisition of additional information, it now appears that the interests at issue are overriding royalty interests." It further states the discovery is "immaterial to the issue presented in light of the fact that overriding royalty interests, like working interests, are interests in real property." While appellees explain the difference in the two kinds of interests in a footnote in their brief, they agree with appellant that both are considered real property interests in Kentucky. Thus, we need not discuss the difference in the two types of interests as it is not relevant to the appeal. Further, we will refer to the alleged interests as working interests because that is how appellant refers to them in its pleadings.

breach of contract against OAG and York. And finally, it brought an unjust enrichment claim against OAG.

Appellees filed pleas to the jurisdiction in which they argued the trial court lacked subject matter jurisdiction. They argued a Texas court has no jurisdiction to adjudicate title to real property located in another state, and a working interest in an oil and gas lease is an interest in real property. They further alleged each of appellant's claims arise from interests in Kentucky, and in order for the trial court to determine whether appellant's claims have merit, a Texas court must adjudicate title to a real property interest in Kentucky. This, according to appellees, a Texas court cannot do. Thus, appellees sought to have appellant's causes of action dismissed for want of subject matter jurisdiction.

Appellant responded its case was not a naked question of title, which would be a local, in rem action subject to dismissal. Rather, its claims are transitory because the trial court is only required to analyze appellees' conduct in the handling of the transaction, not to adjudicate title to the working interests in Kentucky.

After a hearing, the trial court granted appellees' pleas to the jurisdiction and dismissed appellant's claims for lack of subject matter jurisdiction. This appeal followed.

## Standard of Review

■■■ A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a cause of action. *Trutec Oil & Gas, Inc. v. W. Atlas Int'l, Inc.*, 194 S.W.3d 580, 584 (Tex.App.-Houston [14th Dist.] 2006, no pet.). Subject matter jurisdiction raises a question of law, which we review de novo. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998). In deciding a plea to the jurisdiction, a court must not weigh the claims'

merits and should consider only the plaintiff's pleadings and evidence pertinent to the jurisdictional inquiry. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). When considering a trial court's order on a plea to the jurisdiction, we first review the plaintiff's pleadings. We construe the pleadings in the plaintiff's favor and look to the pleader's intent. *Id.* The plaintiff bears the burden to allege facts that affirmatively demonstrate the court's jurisdiction to hear the case. *City of Dallas v. Turley*, 316 S.W.3d 762, 767 (Tex. App.-Dallas 2010, pet. denied).

## Discussion

■■■ The local action doctrine has a long history in the United States. Texas has recognized the doctrine for many years as well. *Greenpeace, Inc. v. Exxon Mobil Corp.*, 133 S.W.3d 804, 808 (Tex. App.-Dallas 2004, pet. denied). The doctrine maintains that an action or remedy for injuries done to land situated beyond the boundaries of this state, when no part of the act resulting in injury was performed or committed within this state, is purely local and cannot be maintained in any court of this state. *Id.; see also Kelly Oil Co. v. Svetlik*, 975 S.W.2d 762, 764 (Tex.App.-Corpus Christi 1998, pet. denied) (holding Texas courts may not adjudicate title to realty in another state or country). The enforcement of a remedy in such cases must be had within the jurisdiction where the land is situated. *Greenpeace, Inc.*, 133 S.W.3d at 808. On the other hand, if the crux of the action does not hinge on resolution of issues specific to the land, but upon conduct of the person, then the cause should be deemed transitory and may be maintained in this state. *Id.*

Further, it is well-settled that royalty interests in oil and gas leases are interests in real property held to have the same

attributes as real property. *Id.; see also Trutec Oil & Gas, Inc.,* 194 S.W.3d at 583 (noting interests in oil and gas rights, such as working interests and royalty interests, are considered interests in real property).

Appellant asserts its claims are transitory because they are based on appellees' conduct, while appellees argue the causes of action are directly tied to the oil and gas interests in Kentucky; therefore, the action is local and cannot be maintained in Texas. To determine the nature of appellant's claims, we begin by analyzing its live pleadings.

In addition to the above factual background, appellant's original petition described certain of its causes of action as follows: [3]

- Federal Securities Act of 1933 and Texas Securities Act Violations: "OAG and York fraudulently induced Danish Leasegroup to pay OAG $750,000 in exchange for what was supposed to be the ownership of working interests. Despite offering the working interests for sale and accepting Danish Leasegroup's payment for purchase thereof, *OAG and York did not actually sell Danish Leasegroup the working interests and never intended to do so.*"

- Statutory Fraud and Common Law Fraud: "OAG and York made false material misrepresentations ... Danish Leasegroup relied upon the representations and transferred $750,000 to OAG to obtain the working interests. *OAG and York did not transfer title to the working interests to Danish Leasegroup.*"

- Negligent Misrepresentation: "OAG and York were negligent in the representations they made to Danish Lease-

group in connection with the working interests ... OAG and York supplied this information to Danish Leasegroup for its *guidance in determining whether to purchase working interests from OAG and York.*"

- Breach of Contract: "Danish Leasegroup, OAG, and York entered into an agreement ... to obtain working interests in certain, specific oil and gas leases in Kentucky ... *OAG and York failed to transfer title to the working interests to Danish Leasegroup.*"

- Unjust Enrichment: " ... OAG has knowingly benefitted from wrongfully receiving the $750,000.00 Danish Leasegroup paid to it. These actions have resulted in OAG's unjust enrichment...."

- Breach of Fiduciary Duty: "OAG breached its fiduciary duties to Danish Leasegroup *by failing to follow Danish Leasegroup's directives and purchase specific working interest* [sic] ... Danish Leasegroup has been *damaged because it never received the working interests it believed had been purchased with its funds.*"

- Civil Conspiracy: "OAG and York, ..., combined with the unlawful purpose of, and agreement to, commit fraud against Danish Leasegroup.... OAG and York, ... took unlawful and overt actions in furtherance of their conspiracy *by representing to Danish Leasegroup that specific working interests were for sale and would be sold to Danish Leasegroup upon its payment of $750,000.00 ... no working interests were transferred to Danish Leasegroup.*"

Appellant also sought application for a temporary injunction "to preserve the

---

**3.** We note the parts in italics have been added for emphasis and are not part of the original petition.

working interests that are the subject of this suit." It further sought an accounting because when it "requested evidence that title to the working interests had actually been conveyed to it, OAG and York explained that title had never been transferred and refused to do so." And lastly, it sought a receivership and constructive trust to protect the working interests it purchased but never received title to.

Considering these pleadings and the evidence, we agree with appellees that the facts and circumstances here are most analogous to those in *Trutec Oil & Gas, Inc. v. Western Atlas International, Inc.*, 194 S.W.3d 580 (Tex.App.-Houston [14th Dist.] 2006, no pet.). In that case, Trutec entered into an agreement with Moni Pulo, Ltd., a Nigerian company, pursuant to which Trutec was to receive a ten percent interest in any leases the Nigerian government granted from an oil prospecting lease. *Id.* at 582. Subsequently, Moni Pulo entered into a joint venture with Brass Exploration, which obtained an oil and gas lease from the Nigerian government. *Id.* Trutec filed suit against a number of defendants alleging an array of theories including breach of contract, conversion, unfair business practices, breach of fiduciary duty, and civil conspiracy based on its agreement with Moni Pulo. *Id.* at 583. Trutec also sought an accounting, a constructive trust, and declaratory relief. *Id.* The trial court granted the defendants' motion to dismiss for lack of subject matter jurisdiction. *Id.*

On appeal, Trutec acknowledged the general prohibition against Texas courts adjudicating interests in non-Texas property but argued the general rule did not apply. Trutec claimed its breach of contract, tort, and other claims were "only tangentially related to the real property." *Id.* at 583–84. The court of appeals disagreed.

After analyzing Trutec's pleadings and the evidence, the court of appeals concluded Trutec's suit required an adjudication of property interests outside of Texas. *Id.* at 588. At the heart of its claims, Trutec was arguing it received a ten percent interest in an oil and gas lease but had not seen any of the fruits of the ten percent interest. *Id.* at 588. In order to reach the merits of its claims, the trial court would have had to determine if Trutec had an ownership interest in the real property outside of Texas. *Id.* at 591.

In reaching this conclusion, the court of appeals disagreed with Trutec's position that the "principal relief [it] requested was the trial court's determination of issues arising from an agreement ..., not issues specific to Nigerian real property." *Id.* at 588. According to Trutec, in order to provide the relief sought, the trial court needed only to "construe the terms of the agreement and to consider Appellee's actions related to the agreement." *Id.* While the court noted Trutec's brief was well-crafted and Trutec tried its best to distance its suit from the general rule that Texas courts cannot adjudicate interests and title in non-Texas real property, it still concluded the general rule applied. *Id.* at 591. Therefore, the trial court properly dismissed the case for lack of subject matter jurisdiction.

Similar to *Trutec*, appellant argues its claims "are not dependent on Danish Leasegroup having title to the Kentucky working interests, but instead turn on what York and OAG offered to Danish Leasegroup and what it actually received." Because its claims do not involve a "naked question of title," but rather focus on appellees' conduct, appellant asserts the claims are transitory, in personam actions.

■ Following *Trutec*, we disagree. Throughout appellant's pleadings, it re-

peatedly ties its causes of action to "the working interests it never received" and the failure by OAG and York to "transfer tile to the working interests." At its core, appellant's complaint is that it had working interests in oil and gas leases in Kentucky and title to the working interests has not been transferred. Thus, in order to determine whether the causes of action have merit, the trial court would first be required to adjudicate title to the oil and gas interests in Kentucky, which appellant claims to own but OAG denies. This the court cannot do. *See Trutec,* 194 S.W.3d at 586, 586 n. 6 (noting Trutec's claims for breach of contract, specific performance, conversion, breach of fiduciary duty, constructive trust, and accounting were all based on whether it had an oil and gas interest); *see also Kelly,* 975 S.W.2d at 763 (holding claims for breach of contract and conversion involving royalty interests were claims that could only be decided by determining whether plaintiff owned an interest in oil and gas leases outside of Texas; therefore, court lacked subject matter jurisdiction).

Accordingly, we conclude the trial court correctly concluded it had no jurisdiction to resolve the issues appellant raised in its lawsuit. We overrule appellant's sole issue.

## Conclusion

The order of the trial court is affirmed.