

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00269-CV

———————————————

ROBERT SCOTT BAUER AND BRAXTON MINERALS II, LLC, Appellants

V.

BRAXTON MINERALS III, LLC, Appellee

On Appeal from the 141st District Court
Tarrant County, Texas
Trial Court No. 141-313791-19

Before Sudderth, C.J.; Birdwell and Wallach, JJ.
Opinion by Justice Wallach

# OPINION

Braxton Minerals III, LLC (BM3) sued Braxton Minerals II, LLC (BM2) and Robert Scott Bauer (Bauer) (collectively Appellants) in district court in Tarrant County. BM3 alleged that Appellants failed to comply with their representations and contractual obligations to transfer oil, gas, and mineral interests (collectively mineral interests) to BM3 in West Virginia, resulting in BM3 not owning the mineral interests to such properties and not receiving royalty payments for production from the properties. BM3 asked the court (1) to order that the disputed mineral deeds be reformed to show BM3's ownership, (2) to order specific performance for Appellants to transfer and assign the disputed mineral interests and royalties to BM3, and (3) to issue declaratory relief that BM3 is the rightful owner of the disputed mineral interests and award past and future royalty payments from the properties to BM3. BM3 asserted causes of action for fraud and fraudulent inducement, unjust enrichment, imposition of a constructive trust, and money had and received, and temporary and permanent injunctive relief regarding reformation of the disputed mineral deeds and recovery of past and future royalty payments. BM3 also sought recovery of attorney's fees.

Appellants counterclaimed against BM3 alleging that BM3, acting in concert with one of Appellants' managers, defrauded them in the transactions involved in BM3's claims and sought damages for (1) fraud and wrongful taking of the mineral interests in West Virginia and royalty payments therefrom, (2) unjust enrichment,

2

(3) money had and received, and (4) attorney's fees. Appellants did not seek to have any property interests transferred or deeds reformed. The trial court granted summary judgment for BM3 on its claims for affirmative relief, denied Appellants' summary judgment motion on their counterclaim, and after conducting a bench trial on attorney's fees, awarded final judgment in favor of BM3, incorporating its earlier summary judgment rulings.[1]

Appellants appeal from the trial court's final judgment, raising ten issues with subparts. Appellants' first issue challenges the trial court's subject matter jurisdiction. Because we sustain Appellants' first issue, we will reverse the judgment of the trial court in favor of BM3 on its claims for affirmative relief against Appellants and dismiss BM3's case for want of jurisdiction. Appellants' issues 2 through 9[2]

---

[1]The trial court included in its final judgment an award against Appellants, jointly and severally, for $15,000 in attorney's fees and $15,000 in sanctions which had purportedly been assessed by the regional presiding judge for frivolous attempts to recuse the presiding trial judge, payable on entry of final judgment. The regional presiding judge's "Order Denying Defendants/Counter Plaintiff's Motion to Recuse and Granting Braxton Minerals' III, LLC's Request for Sanctions" found that the reasonable attorney's fees incurred by BM3 in responding to the third motion to recuse was $15,000 but the decretal language awarded "sanctions" to BM3 against Appellants, jointly and severally, in the amount of $15,000 without any direct reference to attorney's fees. Because we hold that the trial court had no subject matter jurisdiction of the claims of either party, the award of attorney's fees as sanctions should be dismissed for want of jurisdiction. *See In re C.R.C.*, No. 05-20-00125-CV, 2022 WL 16549070, at *2 (Tex. App.—Dallas Oct. 31, 2022, no pet.) (mem. op.) (holding that award of attorney's fees as sanctions in a judgment that was void due to lack of subject matter jurisdiction must be dismissed for want of jurisdiction).

[2]Appellants' numbering and wording of their issues in the Issues Presented section of their brief differs somewhat from the numbering and wording of their

3

challenging the trial court's judgment regarding BM3's claims for affirmative relief are mooted by our holding on issue one, and we need not address them. *See* Tex. R. App. P. 47.1.

Appellants' issue ten challenges the trial court's denial of their summary judgment on their counterclaim for damages. We overrule this issue as well because the trial court had no jurisdiction over the counterclaim. Therefore, we will dismiss Appellants' counterclaim for want of jurisdiction.

## I.    Standards of Review and Legal Principles

When a party challenges the subject matter jurisdiction of the trial court on appeal but fails to adequately brief it, we have a duty to determine whether the trial court had subject matter jurisdiction. *Jarvis v. Field*, 327 S.W.3d 918, 924 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.).[3] In reviewing a challenge to the court's subject matter jurisdiction, we may review the pleadings and any other evidence relevant to the subject matter jurisdiction issue. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Devon Energy Prod. Co., v. KCS Res., LLC*, 450 S.W.3d 203, 210 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Whether a trial court

issues as set out in the Arguments section of their brief. We will use the numbering as set out in the Arguments section.

[3]As in *Jarvis*, Appellants here made a conclusory statement in their brief that the trial court had no jurisdiction in this case because it involved determination of ownership of mineral interests in a foreign jurisdiction and cited several cases to support the general proposition. Appellants provided no analysis of their argument. *See Jarvis*, 327 S.W.3d at 924.

4

has subject matter jurisdiction is a question of law, which we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Danish Leasegroup, Inc. v. York Oil & Gas Mgmt, Inc.*, 362 S.W.3d 220, 223 (Tex. App.—Dallas 2012, no pet.).

## II. Analysis

We start with the basic principle that Texas courts have no jurisdiction to adjudicate title to real property in other jurisdictions. *Fox v. Fox*, No. 14-18-00672-CV, 2020 WL 1265366, at *3 (Tex. App.—Houston [14th Dist.] March 17, 2020, no pet.); *Trutec Oil & Gas, Inc. v. W. Atlas Int'l, Inc.*, 194 S.W.3d 589, 583 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *Carmichael v. Delta Drilling Co.*, 243 S.W.2d 458, 460 (Tex. App.—Texarkana 1951, writ ref'd); *Holt v. Guerguin*, 163 S.W. 10, 12 (Tex. 1914). This rule applies to interests in oil and gas leases and mineral interests in other jurisdictions. *Devon Energy*, 450 S.W.3d at 216; *Trutec*, 194 S.W.3d at 583; *Kelly Oil Co. v. Svetlik*, 975 S.W.2d 762, 764 (Tex. App.—Corpus Christi 1998, pet denied); *Carmichael*, 243 S.W.2d at 460. However, if a Texas court has jurisdiction over the parties, it may enforce a party's personal or contractual obligation that indirectly involves property in another state, such as when a Texas court compels a party over whom it has jurisdiction to execute a conveyance of a real property interest located in another state. To determine the extent to which title and possession are involved, and thereby implicate jurisdiction, we look to the nature of the suit, the injury complained of, and the relief sought, together with any relevant evidence. *Fox*, 2020 WL 1265366, at *3;

5

*Devon Energy*, 450 S.W.3d at 216; *Trutec*, 194 S.W.3d at 583–88. Regardless of how a party frames its pleadings, we look to the basis upon which it seeks to recover judgment. If the gist or gravamen of a claim involves adjudication of title to foreign real property interests, the Texas court lacks subject matter jurisdiction. *Fox*, 2020 WL 1265366, at \*3; *Merit Mgmt. Partners I, L.P. v. Noelke*, 266 S.W.3d 637, 646–47 (Tex. App.—Austin 2008, no pet.). If ownership of foreign jurisdiction real property interests is more than incidental or collateral to the claims and measure of recovery, then the court lacks jurisdiction. *Noelke*, 266 S.W.3d at 646–47.

Applying these standards, how do the pleadings of the parties in this case speak to the jurisdictional issue? From the discussion of the pleadings set forth above, we hold that the pleadings demonstrate that the trial court did not have subject matter jurisdiction of the claims raised by BM3 and that its claims for affirmative relief should be dismissed for want of subject matter jurisdiction. Likewise, we hold that the trial court did not have jurisdiction of the Appellants' counterclaim.

## A.    BM3's claims

We find the following cases to be instructive, starting with *Danish Leasegroup*, which involved oil and gas leases in Kentucky. 362 S.W.3d at 222. Danish Leasegroup was offered working interests in oil and gas leases in Kentucky, which it accepted in return for a $750,000 payment to OAG/York, who was to use the funds to purchase working interests for Danish Leasegroup's benefit. OAG/York accepted the payment and sent statements to Danish Leasegroup showing its working interests in the leases.

Danish Leasegroup then received a percentage of income from the working interests and distributed those funds to its investors. Thereafter, Danish Leasegroup sought assurances from OAG/York regarding its title to the Kentucky working interests, and OAG/York denied having transferred title to the interests and denied any agreement to do so. Danish Leasegroup sued OAG/York for failing to transfer title to the working interests and for damages flowing therefrom. *Id.* The causes of action asserted by Danish Leasegroup were for

- violation of state and federal securities acts (fraudulently inducing the payment of the $750,000 for the working interests),

- statutory and common law fraud for the same conduct and failing to transfer title to the working interests,

- negligent misrepresentation in providing guidance on whether to purchase the working interests,

- breach of contract for failing to transfer the working interests as agreed,

- unjust enrichment as a result of failing to transfer the title to the working interests,

- breach of fiduciary duty for failing to transfer title to the working interests,

- civil conspiracy to defraud Danish Leasegroup of its title to the working interests,

- injunctive relief to preserve the working interests at issue,

- an accounting, and

- constructive trust and receivership to protect the un-transferred working interests.

*Id.* at 224–25.

In holding that these allegations required an impermissible determination of title to foreign real property interests, our sister court stated:

> Throughout appellant's pleadings, it repeatedly ties its causes of action to "the working interests it never received" and the failure by OAG and York to "transfer title to the working interests." **At its core, appellant's complaint is that it had working interests in oil and gas leases in Kentucky and title to the working interests has not been transferred. Thus, in order to determine whether the causes of action have merit, the trial court would first be required to adjudicate title to the oil and gas interests in Kentucky, which appellant claims to own but OAG denies. This the court cannot do.** *See Trutec*, 194 S.W.3d at 586[ &] n.6 (noting Trutec's claims for breach of contract, specific performance, conversion, breach of fiduciary duty, constructive trust, and accounting were all based on whether it had an oil and gas interest); *see also Kelly*, 975 S.W.2d at 763 (holding claims for breach of contract and conversion involving royalty interests were claims that could only be decided by determining whether plaintiff owned an interest in oil and gas leases outside of Texas; therefore, court lacked subject matter jurisdiction).

*Id.* at 225–26 (emphasis added).

The allegations made and remedies sought in this case are very similar to those in *Danish Leasegroup*. BM3 alleged that Appellants had represented, and entered into an agreement, that BM2 would transfer title to mineral interests it owned in West Virginia, which interests were subject to producing oil and gas leases owned by Antero Resources. BM3 further alleged that BM2 had failed and refused to notify Antero, the producer, that BM3 was the new owner of those mineral interests

resulting in Antero initially improperly paying royalties to BM2 and subsequently in Antero paying royalties into a suspense fund pending resolution of the ownership question. Asserting various legal theories like the ones asserted in *Danish Leasegroup*, BM3 sought to have the deeds corrected to show its ownership of the mineral interests, to have specific performance of its contractual rights of ownership of the mineral interests, to recover the royalty payments improperly paid to BM2, and for injunctive relief to prevent improper payments being retained by BM2 in the future.

BM3 also alleged that it had arranged funding for additional mineral deeds through the mechanisms established in its contract with Appellants, that the interests made the subject of those deeds had been acquired by Appellants but that the mineral deeds prepared by Appellants reflected BM2, not BM3, as the owner, and that the court should order the correction of those deeds to reflect its ownership and issue injunctive relief to protect BM3's rights to future royalty payments based on the similar legal theories of recovery and relief.

Using the legal standards set out in *Danish Leasegroup*, it is clear that not only the gist, but the core, of BM3's allegations revolve around its claims of ownership of the mineral interests in question, not only as to the correction of the deeds and requests for specific performance of the contract, but also for recovery of improperly paid royalties in the past and protection for royalty payments in the future as well as the other causes of action. *See also Trutec*, 194 S.W.3d at 583-86, 588–90 (holding suit by consultant to Nigerian oil venture seeking undivided interest in Nigerian oil lease to

9

be suit seeking interest in foreign real property outside the Texas court's jurisdiction despite argument that suit was for breach of contract, tortious interference and unfair business practices, conversion, breach of fiduciary duties, and conspiracy).

We also find *Devon Energy* to be instructive. 450 S.W.3d at 203. That case involved oil and gas leases, wells, and mineral interests in Louisiana and Mississippi as well as Texas. The purchase and sale agreement (PSA) conveyed all of Devon's right, title, and interest in certain properties, mineral interests, royalty and overriding royalty interests, and wells to KCS. At the closing, Devon executed various deeds including one for the sale of the DeSoto Parrish assets (DeSoto deed) in Louisiana. Subsequently, the parties developed a disagreement on what particular properties were conveyed in the deeds.

Litigation was filed in both Louisiana and Texas courts. *Id.* at 208. While the Louisiana case was stayed, in Texas, Devon sought declaratory relief pursuant to a forum selection clause in the PSA seeking a declaration of the parties' rights under the DeSoto deed and the PSA. *Id.* KCS challenged the trial court's jurisdiction arguing that the court lacked jurisdiction to declare title to the Louisiana interests. *Id.* at 208–09. The trial court conditionally granted the challenge but allowed Devon the opportunity to amend its pleadings. *Id.* at 208.

Devon amended its pleadings, seeking a declaration of the parties' intent regarding the conveyance of the disputed properties in the PSA alone. *Id.* at 209. KCS

challenged the jurisdiction again, arguing that only the deed was relevant under the merger doctrine. The trial court denied this challenge. *Id.* at 209.

Eventually, KCS filed a motion for summary judgment challenging the court's jurisdiction. KCS argued that a declaration of the parties' intent to convey under the PSA would be an impermissible advisory opinion because the PSA merged into the DeSoto deed, so the parties' intent under the PSA was superseded and mooted by the DeSoto deed, and the DeSoto deed established what was actually conveyed, and determining title to real property in foreign jurisdictions is beyond the jurisdiction of Texas courts. *Id.* Devon responded, in part, that Texas courts do have jurisdiction to interpret contracts involving land in foreign jurisdictions as long as the case does not involve a "naked question of title," which was not present in that case. *Id.*

After a lengthy discussion of the merger doctrine, our sister appellate court held that the parties' intent under the PSA was moot because the PSA was merged into the Desoto deed. *Id.* at 212–13. The court then addressed the jurisdictional issue. In holding that the pleadings established lack of jurisdiction, the court stated:

> It is evident, however, that the relief Devon ultimately seeks is the resolution of the disagreement between it and KCS as to which of them owns the Disputed Properties in Louisiana. Notably, Devon first filed suit in Louisiana, claiming that it owned the mineral interests KCS had mortgaged. And when Devon originally filed this lawsuit in Texas, it requested declarations regarding ownership of the Disputed Properties under both the DeSoto Deed and the PSA. Only after the trial court granted KCS's plea to the jurisdiction did Devon amend its pleadings to argue that the dispute could be resolved by interpreting the PSA alone. Moreover, although Devon relies on cases like *McElreath* [*v. McElreath*, 345 S.W.2d 722 (Tex. 1961)] for the proposition that a Texas court has

11

subject matter jurisdiction to order a conveyance of out-of-state property, neither party has requested such relief. Instead, Devon requests a declaration of the Louisiana mineral interests it intended to convey.

. . . .

**In contrast, the pleadings, factual allegations, and relief sought in this case demonstrate that the gravamen of Devon's action is the determination of the parties' existing property interests located in another state. Despite being couched as a request for declaratory relief under the UDJA, the relief Devon seeks is in essence a determination of title to land in Louisiana-a matter over which the trial court lacks jurisdiction.** *See Trutec . . . ,* 194 S.W.3d at 588; *Miller* [*v. Miller*], 715 S.W.2d [786,] 789 [(Tex. App.—Austin 1986, writ ref'd n.r.e.)]; *see also Renwar Oil Corp. v. Lancaster,* 154 Tex. 311, 276 S.W.2d 774, 776 (1955) (in context of venue dispute, suit was in essence one for recovery of interest in land despite being cast as one for declaratory judgment).

*Id.* at 217–18 (emphasis added).

In our case, BM3 sought declaratory relief regarding the ownership of the West Virginia mineral interests and royalties. The gravamen of BM3's lawsuit is to obtain title to real property interests in a foreign jurisdiction and recover damages flowing from interference with those interests. Thus, under the rationale of *Devon Energy*, the trial court in this case did not have jurisdiction to hear the case as a declaratory judgment action.[4] *See id.*; *see also In re Applied Chem. Magnesias Corp.*, 206 S.W.3d 114,

---

[4]The Declaratory Judgment Act does not create or enlarge a trial court's subject matter jurisdiction. It is only a procedural device for deciding cases already within the trial court's jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993); *Devon Energy*, 450 S.W.3d at 210; *see* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a).

116 (Tex. 2006) (holding declaratory judgment action seeking declaration of rights to extract minerals from property pursuant to a letter agreement to be a suit seeking recovery of an interest in real property and therefore subject to the mandatory venue provision in Tex. Civ. Prac. & Rem. Code Ann. § 15.011 based on the "essence" of the dispute).

BM3 contends that we should hold that this is a case of the trial court being asked to make declarations and order relief regarding the parties' obligations to one another. It relies on two cases cited in *Trutec* in support of this theory. First, they cite to *Miller v. Miller*. *See* 715 S.W.2d at 786. We find this case to be harmful, not helpful to BM3's position. *Miller* involved a family dispute over title to mineral interests in Oklahoma with the dispute being litigated in district court in Travis County, Texas. 715 S.W.2d at 786–87. After a complicated procedural process, the trial court ordered one set of parties (Anne) to execute a quitclaim deed transferring their interests in the disputed property to the opposing party (Laurence). *Id.*

On appeal, Anne contended that the judgment was void because the trial court lacked jurisdiction to order the transfer of title to real property outside Texas. *Id.* Laurence contended that a Texas court may properly determine the rights of parties before it to real property located in another state and effectuate those rights through the issuance of decrees acting directly on the parties. *Id.* at 787–88. Although the appellate court acknowledged that there are circumstances where courts can determine personal rights between parties and issue orders affecting real property

13

outside Texas, in *Miller* the parties were directly asking the court to adjudicate title to Oklahoma real property and order the transfer of title. *Id.* at 789. Thus, the Austin Court of Appeals reversed the trial court's order and dismissed the case for want of jurisdiction. *Id.* at 786.

BM3 also cites *Hartman v. Sirgo Operating, Inc.*, 863 S.W.2d 764 (Tex. App.—El Paso 1993, writ denied). The court succinctly summarized the facts of that case as:

> Sirgo Brothers, Inc. and Sirgo Operating, Inc. (Sirgo) began negotiating with Doyle Hartman in 1990 for the purchase of his interest in the Myers Langlie–Mattix Unit, an oil producing waterflood project in Lea County, New Mexico. Hartman's interest in the Unit was the community property of him and his wife, Margaret. Negotiations were conducted for Hartman by his landman, Bryan Jones. Jones and Sirgo signed a letter agreement in November 1990 which required Sirgo to obtain certain interest owned by Atlantic Richfield (ARCO) which was to be exchanged for the interest owned by Hartman. Sirgo and ARCO entered into an agreement in April 1991 for the exchange of properties. That agreement was mutually rescinded by the parties on May 14, 1991. Sirgo then filed this suit for a declaratory judgment to determine the rights of the parties under the November 1990 letter agreement. Hartman then filed suit in New Mexico seeking specific performance of the various contracts. That suit was dismissed following the entry of the judgment in this case.

*Id.* at 766.

The trial court declared the contract void under New Mexico's joinder statute because the wife had not signed the contract. *Id.* Attorney's fees were awarded to the Appellees. *Id.* On appeal, Hartman contended that the trial court lacked jurisdiction because the case involved a determination of title to New Mexico real property. *Id.*

14

While the El Paso appellate court acknowledged that principle, it distinguished it as follows:

> In this case, Sirgo sought a determination of the parties' rights and legal obligations under the letter agreement executed in November 1990. That agreement provided for the exchange of Hartman's interest in the waterflood unit for certain property to be acquired by Sirgo from ARCO. The exchange was conditioned upon Sirgo's acquisition of certain interest from ARCO. **The trial court was not required to determine ownership of land in New Mexico nor was any relief sought requiring the transfer of title to land in New Mexico.** The declaratory judgment suit was only seeking to determine obligations under a contract, which contract did involve an obligation to exchange land in New Mexico. **Unlike the suit in _Carmichael v. Delta Drilling Co._, this suit was not filed seeking specific performance of the parties' agreement. And unlike _Miller v. Miller_, this suit did not seek to determine ownership of mineral rights located in another state.** The trial court had jurisdiction to determine if certain conditions precedent had been met and if the contract was valid and if the parties' obligations were valid and enforceable.

_Id._ at 766–67 (emphases added).

Unlike in _Hartman_, BM3 did ask for specific performance of the parties' alleged agreement and did ask the court to change the ownership of the foreign mineral interests. Thus, _Hartman_ is simply not applicable.[5]

---

[5]BM3 argues in its brief that title to the West Virginia interests was never questioned in the trial court or on appeal. We find this position untenable. BM3's contentions in its pleadings were that BM2 wrongfully refused to title the mineral deeds properly to reflect BM3's ownership of the mineral interests in question and that BM2 was wrongfully exercising control of BM3's rights to royalties from the properties. BM3 asked the trial court to order reformation of the deeds, specific performance of the contract, damages for wrongful control of the royalties, and injunctive protection from such in the future. Based on the authorities cited above, these allegations constituted a dispute about title to ownership of real property interests in a foreign jurisdiction.

We hold that the trial court had no subject matter jurisdiction of BM3's claims for affirmative relief. We sustain Appellants' first issue, and we therefore need not reach Appellants' second through ninth issues. *See* Tex. R. App. P. 47.1.

## B. Appellant's counterclaim

We now turn to Appellants' tenth issue, which challenges the trial court's summary judgment on their counterclaim. Appellants argue that BM3's summary judgment motion failed to negate Appellants' counterclaim. Appellants' counterclaim alleged that BM3, acting in concert with Appellants' own manager, defrauded them in the sales and exchanges of the mineral interests in question, resulting in damages being incurred. The wrongful conduct centered around transferring mineral deeds to properties without Appellants' consent or knowledge, or without any or adequate consideration. The resulting damages were Appellants' loss of valuable mineral interests and the past and future income from those interests. Appellants sought damages for unjust enrichment, an accounting, imposition of a constructive trust on the ill-gotten assets, and for recovery of attorney's fees. Appellants did not expressly seek to have title to the mineral interests determined or modified and did not seek specific performance regarding title to those interests.

There is no briefing from the parties directly addressing the question of whether the trial court had jurisdiction of Appellants' counterclaim. Our research, which queried the topic in jurisdictional terms relating to actions for damages for fraud in a foreign real estate transaction, was not productive. However, there is an

16

instructive body of case law relative to the Texas mandatory venue statute dealing with suits seeking a recovery of interests in real property.

As noted previously, when determining whether a pleading seeks an impermissible determination of ownership in interest in foreign real property, including mineral interests, we look to the gist, or gravamen, of the pleadings, not just the labels that the parties place on their theories of recovery. If the gist, or gravamen, of the allegations involves determining ownership of interests in foreign real property, then a Texas court has no jurisdiction. *Fox*, 2020 WL 1265366, at \*3; *Devon Energy*, 450 S.W.3d at 216, 218–19; *Trutec*, 194 S.W.3d at 585–86.

In our state's venue jurisprudence, there is a similar body of law that has developed around the mandatory venue provisions governing suits for recovery of real property interests. Section 15.011 of the Texas Civil Practice and Remedies Code provides that "[a]ctions for recovery of . . . an estate or interest in property, . . . [or] for recovery of damages to real property . . . shall be brought in the county in which all or a part of the property is located." Tex. Civ. Prac. & Rem. Code Ann. § 15.011. The Supreme Court analyzed the proper test for determining whether a case fits within this venue provision in *Applied Chemical Magnesias*. 206 S.W.3d at 116. Like the rule on determining whether a case involves the impermissible effort to determine ownership interests in foreign land, the court held that the nature of the dispute, not the terms used to describe the action, focuses the venue determination. *Id.* at 119.

17

Our sister court's opinion in *In re Kerr* is particularly instructive. 293 S.W.3d 353, 359 (Tex. App—Beaumont 2009, orig. proceeding) (per curiam). There, relator James Thorp served as president of Etoco, L.P. *Id.* at 355. Real party in interest Etoco was involved in discovering and producing oil, natural gas, and petroleum deposits across Texas. *Id.* Etoco sued Thorp and relators Thorp Petroleum Corporation, Cobra Operating Company, J. Robinson Kerr, and Hal Energy Company, alleging that while Thorp was employed with Etoco, he had conspired with the other defendants in fraudulently locating oil, natural gas, petroleum deposits, and reserves for his benefit. *Id.* Etoco contended that Thorp had made profits from these wrongfully acquired real property interests and that they rightfully belonged to Etoco. *Id.* Etoco originally alleged that the defendants fraudulently acquired the interest and sought monetary damages for lost income, interest in the leases and other assets to which it was entitled, and recovery of all assets in the form of mineral leases, operating interests, and leasehold interests. *Id.* at 358.

The defendants moved to transfer venue to Harris County, the county where the real property was located, under Section 15.011 as a suit seeking recovery of interests in real property. *Id.* at 355 (citing Tex. Civ. Prac. & Rem. Code Ann. § 15.011). After the venue motion was filed, Etoco amended its pleadings to expressly disclaim that it was seeking any recovery of interests in real property and to assert that it was only seeking damages for lost profits or net operating revenue incurred in the past as a result of the defendants' breaches of fiduciary duty, fraud, and conspiracy. *Id.*

18

at 356. The trial court denied the venue motion, and the defendants sought mandamus relief from the court of appeals. *Id.* at 355–56.

The court of appeals conditionally granted mandamus relief. *Id.* at 355. The court first noted the well accepted rule that the venue determination was to be based on the facts existing at the time the cause of action accrued. *Id.* at 358–59. Thus, the fact that the plaintiff amended its cause of action to delete express claims for recovery of interests in real property was of no import. *Id.*

Second, the court noted that mandatory venue provisions may not be evaded by artful pleading; rather, "[t]he nature of the dispute, not the terms used to describe the action, focuses the venue determination." *Id.* at 359 (citing *Applied Chem. Magnesias*, 206 S.W.3d at 119). The court went on to hold that "[w]hen the underlying issue that a plaintiff must prove to show its entitlement to damages involves proof of the ownership rights to mineral interests, [S]ection 15.011 applies." *Id.* at 358. After observing that Etoco's live pleading sought disgorgement of past profits and recovery of past damages based on production that Etoco asserted was its property and recovery of lost profits or lost net operating revenue in the past from the minerals Etoco claimed to own, the court held that Etoco's suit was contesting the defendants' rights to develop those minerals in Harris County and that Etoco's claim depended on the rightful ownership of the real property interests. *Id.* at 359–60. Because the dispute was essentially over the rightful ownership of real property interests in Harris County, Section 15.011 applied. *Id.*

19

*Kerr* is very similar to our case. Appellants contend that they were the rightful owners of mineral interests in West Virginia and that one of their managers, acting in concert with competitors, defrauded them of the ownership and production of minerals, royalties, and profits from those properties. Appellants sued their competitor seeking an accounting, recovery of money damages, and a constructive trust for the loss of those benefits which would have accrued to them had their own manager and its conspirators not defrauded them. Like in *Kerr*, in order to recover the damages claimed, Appellants would have needed to prove their rightful ownership of the mineral interests. Under *Kerr*, those circumstances would justify the application of Section 15.011 for mandatory venue as a suit for the recovery of interests in real property if the property had been located in Texas. Since the test for determining whether a suit is one for recovery of interests in real property is similar for jurisdiction and venue purposes, we find the rationale from *Kerr* to be persuasive. We hold that the gravamen of Appellants' counterclaim is determining ownership of interests in real property in a foreign jurisdiction.

We find further support in *In re Stephens*, another mandamus proceeding to compel mandatory venue under Section 15.011. No. 05-20-00833-CV, 2021 WL 1904324, at *9 (Tex. App—Dallas May 12, 2021, orig. proceeding) (mem. op.). The Stephens parties had obtained an "original" judgment against Frank and obtained turnover orders for his mineral interests in Reagan County, resulting in Frank assigning his mineral interests to a constable who sold them to the Stephens

parties, who subsequently assigned them to another party. *Id.* at *1–2. Over the years, subsequent litigation events resulted in a "reformed" judgment being entered against Frank, which eventually caused Frank (and parties in privity with him) to contest the validity of the original judgment and the assignment of the mineral interests. *Id.* at *1–3.

Frank filed suit in Dallas County. *Id.* at *3. He alleged that the litigation events after the original judgment had rendered the turnover order and the resulting sale and assignments null and void such that title never left Frank. *Id.* Further, Frank alleged that all proceeds from the mineral interests of those properties paid to the Stephens parties in the past belonged to Frank and should be credited against the reformed judgment. *Id.* at *3–4. Frank requested an accounting, appointment of a receiver, declaratory judgment that Frank had fully satisfied the reformed judgment, removal of the cloud on the title from the Stephens' judgment collection efforts, orders for the return of wrongfully taken property, imposition of a constructive trust, declaratory judgment that the assignments and liens were void, and actual and punitive damages for tortious interference, conversion, and abuse of process. *Id.* at *4.

The Stephens parties answered and moved to transfer venue to Reagan County because the case was a suit to quiet title or recover real property in that county, invoking Section 15.011. *Id.* (citing Tex. Civ. Prac. & Rem. Code Ann. § 15.011). Frank responded by amending the petition to omit requests for relief expressly seeking to quiet title to real property, injunctive relief for enforcement of judgment, or

21

return of wrongfully taken property. *Id.* at *5. The trial court denied the motion to transfer venue, and the Stephens parties sought mandamus relief from the court of appeals. *Id.*

On appeal, the court conditionally granted mandamus relief. *Id.* at *13. The court held that

> The ultimate or dominant purpose of the suit is to establish Frank never lost title to the Mineral Interests in 1999—despite the 1999 Dallas Turnover Order, the Assignment, and the Sale—because Real Parties want a credit against the Judgments for all proceeds Relators have received from the Mineral Interests since 1999. **Real Parties' entitlement to any of their above-requested relief will stand or fall based, in large part, on whether the Supreme Court's Order rendered the 1999 Dallas Turnover Order, the Assignment, and/or the Sale null and void such that Frank remained the true owner of the Mineral Interests all along. Real Parties' suit will have an effect on an interest in land because rightful ownership of the Mineral Interests, which are real property interests, must be decided as a prerequisite to their requested accounting, declaratory judgment, and damages for conversion.**

*Id.* at *8 (footnote omitted) (emphasis added).

The same is true in this case. For Appellants to succeed on their damage counterclaim, they must prove their rightful ownership to the mineral rights. Thus, Appellants' suit is one that requires the trial court to determine ownership of real property interests in a foreign jurisdiction, which is forboden. *See also York v. Oleum Operating Co.*, No. 06-16-00056-CV, 2017 WL 2622797, at *1 (Tex. App.—Texarkana June 16, 2017, no pet.) (mem. op.) (reviewing contract dispute involving claims and counterclaim over damages from an oil well project in Louisiana and holding that

22

both parties' claims required Texas court to adjudicate title to Louisiana mineral rights, so Texas court had no subject matter jurisdiction). Because Appellants had to prove their rightful ownership of the mineral interests to prevail on their damage counterclaim, the trial court would be required to determine rightful ownership of the West Virginia mineral rights, which it did not have jurisdiction to adjudicate. The trial court was therefore without jurisdiction to render any judgment but dismissal for want of jurisdiction. Accordingly, we overrule Appellants' tenth issue, reverse the trial court's summary judgment on Appellant's counterclaim, and render judgment dismissing them for lack of jurisdiction.

## III.     Conclusion

Having sustained Appellants' first issue, which is dispositive of Appellants' second through ninth issues, and having overruled Appellants' tenth issue, we reverse the judgment of the trial court and dismiss the case for want of jurisdiction.


/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  April 18, 2024

23